**Lorenzo LOFTON**

v.

**WYETH LABORATORIES, INC.**

Civ. A. No. 84–2581.

United States District Court, E.D. Pennsylvania.

June 18, 1986.

Michael D. Shapiro, Philadelphia, Pa., for plaintiff.

Steven J. Sundheim, Anthony B. Haller, Pepper, Hamilton & Scheetz, Philadelphia, Pa., Michael F. Dougherty, Wyeth Laboratories, Radnor, Pa., Peggy A. Rabkin, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

VANARTSDALEN, District Judge.

In this dispute arising from the termination of plaintiff's employment at Wyeth Laboratories, Inc. (Wyeth), the defendant has moved for summary judgment on Counts II, III, IV and V of the complaint.[1] Plaintiff does not oppose summary judgment on Counts II, IV and V, which are based on the Pennsylvania Human Relations Act (PHRA), 43 Pa.Stat.Ann. §§ 951–963, interference with prospective contractual relations and negligent and intentional infliction of emotional distress, respectively. Plaintiff does oppose summary judgment on Count III, which is essentially a claim for breach of employment contract.[2]

There was no written contract of employment signed by the employee and the employer. Count III of plaintiff's complaint, however, appears to suggest an employment agreement that was partly oral and partly written. In plaintiff's deposition, plaintiff explains that he was to work for a three-month probationary period after which his employment would become permanent. Under the law of Pennsylvania, promises of permanent, full-time employment do not create employment for a term. See *Murray v. Commercial Union Insurance Co.*, 782 F.2d 432, 435 (3d Cir.1986); *Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306, 312 (1986). In his brief in opposition to the summary judgment motion, plaintiff does not press any claims of employment for a term on the

---

1. Defendant has also requested, in the event that its summary judgment motion is denied, that the court decline to exercise pendent jurisdiction over plaintiff's state law claims.

2. Defendant has not moved for summary judgment on Count I, which is a claim of race discrimination under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e to 2000e–17.

basis of promises of permanent employment, and it is clear from the record that there was no employment for a term.[3]

Plaintiff does contend that provisions in Wyeth's employment manual created certain contractual obligations to plaintiff which Wyeth breached in discharging plaintiff. The employment manual does not contain any provision explicitly stating that Wyeth will discharge employees only for just cause. Nevertheless, plaintiff points to two provisions he contends restrict the right of Wyeth to discharge employees. One provision states that Wyeth "has a firm commitment to equal employment opportunity and a long-standing policy against discrimination."[4] Plaintiff contends that this provision created a contractual obligation for Wyeth not to discriminate on the basis of race and that plaintiff's discharge constituted racial discrimination in breach of that obligation.

The second provision in the employment manual that plaintiff contends created an obligation that was breached states that Wyeth will treat all its employees fairly, encourages employees to discuss problems with their supervisors, and states that employees "have the opportunity to seek review of a decision with each higher level of management, up to and including the Company President."[5] Plaintiff contends that

he was not treated fairly and that he was denied access to company officials on a higher level of management than his direct supervisors in his attempts to resolve the problems that led to his discharge from employment.

Defendant contends that representations contained in an employment manual can never create contractual obligations under Pennsylvania law because an employer's unilateral publishing of its policies does not amount to the meeting of the minds required for a contract. *See Richardson v. Charles Cole Memorial Hospital,* 320 Pa. Super. 106, 466 A.2d 1084 (1983). I do not predict that the Pennsylvania Supreme Court would so hold. To the extent that *Richardson* could be construed as such a broad holding, the Pennsylvania Superior Court, sitting en banc, has declined to commit to such a construction. *Banas v. Matthews International Corp.,* 348 Pa.Super. 464, 502 A.2d 637, 647–48 & n. 11 (1985) ("In another case we may, or may not, decide to permit recovery for breach of a commitment made by the employer in an employee handbook, but this case does not present that issue.... *If* the handbook had contained, if not expressly at least by clear implication, a just cause provision, *then* appellee's claim might have mer-

---

3. If a contract of employment for a term is established, the employer may not terminate the employment prior to the expiration of the term without just cause. *See Bruffett v. Warner Communications, Inc.,* 692 F.2d 910, 913 (3d Cir. 1982).

4. The entire provision reads as follows:
   *Equal Opportunity Policy*
   Wyeth has a firm commitment to equal employment opportunity and a long-standing policy against discrimination. In practice, the Company seeks to recruit, hire, train and promote people in all job classifications without regard to race, color, religion, sex, age, national origin, handicap or status as a Vietnam-era veteran. It is also the Company's policy to fill job vacancies by promoting from within whenever possible.
   All matters relating to employees, such as compensation, benefits, transfers, layoffs, return from layoffs, Company-sponsored training and social and recreational activities, are administered within the framework of this

policy and through Wyeth's written Affirmative Action Plans. Periodic reviews of our personnel practices help us to meet the objectives of this policy.

5. *Assurance of Fair Treatment*
   Fair treatment of employees is a Wyeth tradition to which the Company attaches great importance. All managers and supervisors are instructed to maintain a working environment which respects the dignity of every employee and which assures equal and fair treatment for all.
   As a Wyeth employee, we encourage you to discuss with your supervisor freely and privately any problem or complaint you may have. You also have the opportunity to seek review of a decision with each higher level of management, up to and including the Company President. Before such a meeting can take place, however, you must submit in writing to the appropriate Company officer all pertinent facts to allow a thorough review of the matter before your meeting.

it....."). Nevertheless, to the extent that the terms of the employment manual may have created any contractual obligations either by actual negotiation and agreement on those terms, *cf. Richardson*, 466 A.2d at 1085 ("The terms of the handbook were not bargained for by the parties and any benefits conferred by it were mere gratuities."), or by way of a unilateral offer of terms accepted by the performance of employment duties, *see Banas*, 502 A.2d at 656–58 (Beck, J., concurring and dissenting); *Wagner v. Sperry Univac*, 458 F.Supp. 505, 520 (E.D.Pa.1978), the provisions in the manual cannot be construed to alter the employment-at-will relationship and do not grant plaintiff the right to continued employment in the absence of just cause for dismissal.

In *Banas* the Pennsylvania Superior Court held that where an employment handbook does not contain, "expressly or by clear implication, any just cause provision" the handbook does not alter the employment-at-will relationship. 502 A.2d at 648. In *Banas*, the employee was discharged from his employment as a tooler at a company that manufactured grave markers because he had used company materials to make a grave marker for his nephew. He had contended that he obtained permission from supervisors to use the materials and his discharge, under the circumstances, was contrary to the provision in the employment manual that stated:

> Employees are not generally permitted to work on personal jobs during company time or on company premises. However, supervisors will often cooperate by giving permission for you to use our equipment and waste material for your personal work.

*Banas*, 502 A.2d at 641. The Superior Court held that, even accepting the jury's implicit finding that the supervisors gave permission for the personal work, the em-

ployee's discharge did not breach any contractual obligation to the employee because the manual did not require just cause for discharge. *Id.* at 647–48. Although the discharge may not have been based on just cause considering the employment manual, the employment manual did not require just cause for discharge.

The *Banas* case, as a very recent en banc Superior Court case, provides the best indication of how the Pennsylvania Supreme Court would rule on the issues presented. According to the principles expounded in the *Banas* opinion, plaintiff in the present case has shown nothing in the employment manual that could "take his case out of the settled employee-at-will rule." 502 A.2d at 648. In this case, as in *Banas*, "the handbook did not contain, expressly or by clear implication, any just cause provision." *Id.* Neither of the provisions cited by the plaintiff states explicitly that employees will only be discharged for just cause. Promises of fair treatment are too vague to constitute a requirement of just cause for discharge. Moreover, the Pennsylvania Superior Court recently held that general employment dispute procedures set forth in employment manuals do not bring an employment relationship out of the employment-at-will rule.[6] *Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306, 316–17 (1986) ("The guidelines state that disputes will be settled by the employer, not a jury.").

Finally, the statements concerning Wyeth's commitment to equal employment opportunity and its "long-standing policy against discrimination" cannot be interpreted to create a requirement of just cause for discharge. Wyeth is legally obligated to avoid racial discrimination in any of its employment practices, including the discharge of employees. Those legal obligations arise, however, from state and fed-

---

6. Even if the dispute procedures cited by plaintiff had altered the employment-at-will relationship, there is no evidence that the procedures were not followed by Wyeth. Although plaintiff claims he was denied access to Dr. Sigg to explain his version of the incident, there is no evidence that plaintiff had complied with the

procedural prerequisite of submitting in writing all pertinent facts prior to the meeting. *See supra* note 5 ("Before such a meeting can take place ... you must submit in writing to the appropriate Company officer all pertinent facts to allow a thorough review of the matter before your meeting.").

eral statutes, not from any terms of any employment contract. To liberally allow statements on equal employment opportunity in employment manuals to create contractual obligations would invite employers to become less avid in publicizing and implementing equal employment policies. The available statutory remedies ensure that racial discrimination will not be tolerated. This is not to suggest that the statutory remedies preempt any contract claims or that an employer would not be subject to contract remedies for breach of an explicit contract provision prohibiting racially motivated discharge. In the circumstances presented in this case, however, the broad statement of equal employment opportunity contained in the employment manual does not create contractual obligations altering plaintiff's status as an employee-at-will. In this case, as in *Banas*, plaintiff essentially is contending "that an employee handbook that *does not provide job security* may be contractually enforced *as if it did* provide job security." *Banas*, 502 A.2d at 644. Under Pennsylvania law, the statements in Wyeth's employment manual do not alter the employment-at-will relationship, and defendant is entitled to summary judgment with respect to plaintiff's contract claims based on the employment manual.

■ Plaintiff also contends, as part of Count III of his complaint,[7] that his discharge violated public policy because it was racially motivated. Pennsylvania law recognizes a public policy exception to the employment-at-will rule, creating a cause

of action for wrongful discharge. *Novosel v. Nationwide Insurance Co.*, 721 F.2d 894 (3d Cir.1983). This wrongful discharge remedy "seems to lie in a twilight area between trespass and assumpsit" but "Pennsylvania has taken the position that 'wrongful discharge' based on a contravention of public policy sounds in trespass rather than assumpsit." *Darlington*, 504 A.2d at 318. Pennsylvania's public policy exception to the employment-at-will rule has been characterized as "narrow." *Id. See generally Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). It creates a cause of action that "may be pursued only if no statutory or contractual remedy is available." *Darlington*, 504 A.2d at 318. The Pennsylvania Human Relations Act (PHRA), 43 Pa.Stat. Ann. §§ 951–963, establishes a remedy for racial discrimination. Regardless whether that remedy is actually invoked, its availability defeats any wrongful discharge claim based on the public policy against racial discrimination. *See Wolk v. Saks Fifth Avenue, Inc.*, 728 F.2d 221 (3d Cir. 1984) (availability of PHRA remedy precludes wrongful discharge action based on public policy against sexual discrimination in employment). Wyeth is entitled to judgment as a matter of law with respect to plaintiff's wrongful discharge claims.[8]

Defendant's motion for summary judgment on Counts II, III, IV and V of the complaint will be granted. The court will order judgment entered in favor of Wyeth on those counts.[9]

7. It is difficult to discern precisely what part of plaintiff's complaint sets forth a claim of wrongful discharge based on violation of public policy, but defendant does not contend that it was not apprised of such a claim and there are sufficient allegations scattered throughout the various counts to suggest that plaintiff might be asserting such a claim.

8. In light of the holding that the PHRA remedies preclude plaintiff's wrongful discharge claim, the court need not consider the issue whether the existence of federal statutory remedies precludes that claim. *See generally Kilpatrick v. Delaware County S.P.C.A.*, 632 F.Supp. 542, 549 (E.D.Pa.1986) ("neither the Third Circuit nor the Pennsylvania Supreme Court has explicitly held

that the existence of a federal remedy for adverse discrimination by an employer preempts Pennsylvania common law actions for wrongful termination").

9. Nothing in the very recent case of *Martin v. Capital Cities Media, Inc.*, 511 A.2d 830 (Pa.Super.1986), would appear to alter the conclusion that defendant is entitled to summary judgment. The *Martin* opinion suggests that a handbook can only have "legally binding contractual significance when the handbook, or oral representations about the handbook, in some way clearly state that it is to have such effect." At 841–842. Under *Martin*, the handbook could not be construed to alter the employment-at-will relationship.