**COLO–TEX LEASING, INC., a Colorado corporation, Plaintiff–Appellant,**

v.

**Ralph NEITZERT, Defendant and Third–Party Plaintiff–Appellee,**

and

**Thomas Harshman, Third–Party Defendant–Appellee.**

No. 86CA0775.

Colorado Court of Appeals, Div. III.

Oct. 8, 1987.

Ranous, Stern & Patrick, P.C., J. Steven Patrick, David M. Barton, Gunnison, for plaintiff-appellant.

Lynch & Puckett, Paul W. Puckett, Denver, for defendant and third-party plaintiff-appellee.

Dufford, Waldeck, Ruland & Milburn, D.J. Dufford, Grand Junction, for third-party defendant-appellee.

BABCOCK, Judge.

In this breach of contract action, plaintiff, Colo–Tex Leasing, Inc. (Colo–Tex), appeals the judgment entered in favor of defendant, Ralph Neitzert. We reverse and remand with directions.

In 1982, defendant entered into a partnership with his brother to operate Jolly Jug Liquors, a retail liquor store. The brother was the managing partner and was responsible for the store's day-to-day operation.

During May 1983, the partners met with a broker to discuss leasing refrigeration equipment for the store. On May 28, 1983, the partners signed a lease agreement for the refrigeration equipment.

The signed agreement and the partners' financial statements were submitted by the leasing broker to plaintiff. Plaintiff approved the lease on June 9, 1983, and, relying on the lease and financial statements, advanced funds to a refrigerator manufacturer to begin custom fabrication of the equipment.

When presented at trial, the lease described the equipment and specified a 60-month term at $1,188.60 per month. However, defendant testified that, when signed, the agreement was blank as to the lease term, lease payments, and the equipment to be leased. Whether the lease was blank as to these provisions was the only material fact in dispute.

The equipment was delivered to Jolly Jug Liquors and installed at the store in July 1983. Thereafter, monthly payments of $1,188.60, as called for by the lease, were made for the equipment for approximately 13 months. This action was commenced when the payments ceased.

Concurrent with the leasing negotiations, defendant was negotiating with his sister for the sale to her of his partnership interest. Defendant testified that he saw the equipment being installed at the grand opening of the liquor store in July 1983; however, he testified that he was not then a partner, having conveyed his interest to his sister. Defendant admitted he never notified plaintiff that he had withdrawn from the partnership.

Defendant alleges that he retained third-party defendant, an attorney, to represent him in the sale of his interest in the liquor store. Defendant contends that any liability attributable to him as a result of plaintiff's claim was the result of the attorney's negligence in failing to secure his release from this partnership obligation.

The trial court found that the lease agreement did not state a rental term and amount nor describe the equipment at the time it was executed. It then held that the lease was unenforceable because there was no meeting of the minds between the parties. Consequently, defendant's cross-claim against the third-party defendant

was dismissed. Defendant has not appealed the cross-claim's dismissal.

Plaintiff contends that the trial court erred in concluding that the lease was unenforceable. We agree.

Colorado recognizes the existence of a contract implied from the conduct of the parties. *I.M.A., Inc. v. Rocky Mountain Airways, Inc.,* 713 P.2d 882 (Colo. 1986); *A.R.A. Manufacturing Co. v. Cohen,* 654 P.2d 857 (Colo.App.1982); *Zimmerman v. Board of Publications,* 598 F.Supp. 1002 (D.Colo.1984). There must be a meeting of the minds as to the essential terms before any agreement will be implied. *I.M.A., Inc. v. Rocky Mountain Airways, supra; A.R.A. Manufacturing Co. v. Cohen, supra.* But, if one performs several acts which amount to an admission of the existence of a contract, one cannot, afterwards, elect to avoid the contract. *See Alfred Brown Co. v. Johnson–Gibbons & Reed Western Paving–Kemper,* 695 P.2d 746 (Colo.App.1984).

When the existence of a contract is in issue, and the evidence is in conflict, it is for the trier of fact to decide the contract's existence. *I.M.A., Inc. v. Rocky Mountain Airways, Inc., supra.* Here, however, it is undisputed that plaintiff expended funds to custom fabricate the equipment, the partnership consented to the installation of plaintiff's equipment in its store, and it used the equipment for over a year. Further, monthly rental payments of $1,188.60 were made on the equipment for at least 13 months following the execution of the "blank" lease. Consequently, we hold that, as a matter of law, the undisputed evidence establishes the existence of an implied lease and the partnership's admission of its existence. Thus, the trial court erred in concluding that the lease was unenforceable.

Defendant, however, argues that his withdrawal from the partnership insulated him from any personal liability on the partnership's lease with plaintiff. We disagree.

Section 7–60–116(1), C.R.S. (1986 Repl. Vol. 3A) provides:

"When a person, by words spoken or written or by conduct, represents himself or consents to another representing him to anyone as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made who has, on the faith of such representation given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner, he is liable to such person whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made."

When a partnership liability results from such a representation, such a person is liable as though he were an actual member of the partnership, whether or not he truly is at that time. Section 7–60–116(2), C.R.S. (1986 Repl. Vol. 3A).

It is undisputed that defendant was a partner of the Jolly Jug Liquors partnership from 1982 until July 1983, when he sold his interest in the store to his sister, and that he represented himself as a partner during the May 1983 meetings with plaintiff's representative. He also signed the lease agreement as a partner.

Thus, defendant represented himself as a partner to plaintiff. Even if he had withdrawn from the partnership when the equipment was installed and used in the store, it is undisputed that he failed to notify plaintiff of the withdrawal. Plaintiff extended credit to the partnership based, in part, upon defendant's representation that he was, indeed, a partner in the business and in reliance on defendant's financial statement. In light of these undisputed circumstances, we conclude, as a matter of law, that he is estopped from denying his liability on the lease.

A partner is discharged from existing liability by an agreement to that effect between the withdrawing partner, the remaining partners, and the partnership cred-

itor. Section 7–60–136(2), C.R.S. (1986 Repl.Vol. 3A). Alternatively, a partner is discharged from an assumed liability when the creditor both knows of and consents to the assumption. Section 7–60–136(3), C.R. S. (1986 Repl.Vol. 3A). *See Wester & Co. v. Nestle,* 669 P.2d 1046 (Colo.App.1983). Here again, plaintiff had no knowledge that defendant had withdrawn from the partnership. Moreover, there was no evidence that plaintiff agreed to discharge defendant from the lease or to its assumption by any third party.

 Finally, if a contract does not fix the time for performance, the law presumes that it is to be performed within a reasonable time. *Anglo–American Mill Co. v. First National Bank,* 76 Colo. 57, 230 P. 118 (1924); *see Twin Lakes Reservoir & Canal Co. v. Bond,* 156 Colo. 433, 399 P.2d 793 (1965). What is a reasonable time is a matter of proof under all the conditions and circumstances surrounding the case. *Shull v. Sexton,* 154 Colo. 311, 390 P.2d 313 (1964).

Here, because the trial court found no contract to exist, it made no determination as to damages. The amount of damage hinges on the amount of the monthly payments and the duration of the lease. The amount of the payments was established through plaintiff's conduct. However, the reasonable duration of the lease under the circumstances of this case was not determined.

Accordingly, the judgment of the trial court is reversed. The cause is remanded with directions to enter judgment of liability against defendant, and for determination of damages consistent with this opinion.

TURSI and CRISWELL, JJ., concur.