Helen TUTTLE, Plaintiff–Appellee,

v.

ANR FREIGHT SYSTEM, INC.,
Defendant–Appellant.

No. 88CA0239.

Colorado Court of Appeals,
Div. IV.

Aug. 9, 1990.

LaFond & Evangelisti, Richard C. La-Fond, Cathy L. Cooper, Denver, for plaintiff-appellee.

Sherman & Howard, Walter V. Siebert, Susan K. Grebeldinger, Denver, for defendant-appellant.

Opinion by Judge DUBOFSKY.

Defendant, ANR Freight System, Inc., appeals from the jury verdict in favor of plaintiff, Helen Tuttle, on her claim of breach of a written employment contract based on defendant's "Employee Guidelines" and her implied contract claim. We affirm.

Plaintiff, a former employee of defendant, brought this action against defendant seeking damages for lost wages, merit increases, and benefits. Plaintiff's claims for breach of oral contract, breach of implied contract, breach of written contract, and promissory estoppel were submitted to the jury. The jury found that there was an oral contract which was breached and awarded Tuttle $1 in damages on that claim. It also found that there was a breach of a written or implied contract based upon the "Employee Guidelines" and

awarded Tuttle $26,000 in damages on those claims. The jury `did not reach a verdict on the claim of promissory estoppel.

Plaintiff worked as an accountant with another trucking company that was purchased and taken over by defendant. When the other company was purchased, defendant approached many of the employees of the pre-existing company and offered them continued employment. Plaintiff, one of these employees, agreed to work for defendant and moved from Wisconsin to Denver.

Plaintiff testified that, both at the time she initially discussed employment and thereafter, the defendant informed her of a commitment to gender equality in employment. Additionally, advancement as well as the pay scale was to be based on the responsibilities of the job and the individual's performance.

Plaintiff contends that this commitment or promise is largely presented through an employee handbook, known as "Employee Guidelines," and constituted an offer for terms of employment which she accepted. On that basis, she asserts the defendant is liable for breach of contract as a result of violating the terms of employment.

Plaintiff also testified that, when she assumed the duties and responsibilities of higher paid employees and received excellent evaluations, she reasonably expected to be compensated at the same rate as those employees. The source of this expectation was, in large part, statements contained in the employee handbook.

Defendant, on the other hand, maintains that the employee handbook was denominated "Employee Guidelines" because it did not consider its contents to consist of concrete promises to the employees. Rather, the statements made therein were merely guidelines or aspirational goals of the company, and therefore, it argues they cannot serve as a basis for either a breach of written contract or implied contract claim.

## I.

### A.

Defendant argues that, as a matter of law, its "Employee Guidelines" lacked the certainty or specificity necessary to constitute an offer and, therefore, the trial court erred in not granting its motion for directed verdict or for a judgment notwithstanding the verdict as to plaintiff's breach of written contract claim. We disagree.

■ In ruling on a motion for judgment notwithstanding the verdict, the court must determine whether there is sufficient evidence for a reasonable person to reach the same verdict as the jury. In making this determination, the court must consider the evidence in the light most favorable to the prevailing party. *Ekberg v. Greene*, 196 Colo. 494, 588 P.2d 375 (1978).

■ An employee handbook may alter at-will employment, and provisions of the handbook may create an enforceable contract. However, liability for breach of contract exists only if the employee can prove all the elements of the formation and breach of a contract. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo. 1987).

■ When the existence of a contract is in issue and the evidence is in conflict or admits of more than one inference or conclusion, then it is for the jury to decide whether a contract exists. *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882 (Colo.1986). Also, whether an employer and employee have entered into a contract based upon an employee handbook is generally a question of fact for the jury. *See DeRubis v. Broadmoor Hotel, Inc.*, 772 P.2d 681 (Colo.App.1989); *Cronk v. Intermountain Rural Electric Ass'n*, 765 P.2d 619 (Colo.App.1988). And, whether the parties intended to enter a contract is a factual question. *Chambliss/Jenkins Associates v. Forster*, 650 P.2d 1315 (Colo. App.1982).

Here, defendant's employee handbook stated the company would not discriminate on the basis of race, sex, religion, or national origin. In conjunction with this statement, the handbook also states:

> "[w]e *commit* to provide you with a fair and equitable working environment...."
> (emphasis added)

*Webster's Third New International Dictionary* 457 defines "commit" as: "to obligate or bind to take some ... course of action" and "to pledge to some particular course or use: contract or bind by obligation to a particular disposition." Hence, defendant's use of that word demonstrates a promise by defendant to follow an equal employment program within the company.

Plaintiff also assertedly relied on the section entitled "Compensation Position," which states:

"It is the objective [of defendant] to assure that individuals are fairly compensated on the basis of their own performance and that all positions are appropriately graded in terms of both internal alignment and competitiveness with external labor markets."

The handbook describes in detail three main tools that are used to determine salaries: (1) job evaluation or position description, (2) salary ranges, and (3) performance appraisal.

Furthermore, defendant placed great emphasis on this handbook in dealing with plaintiff. For example, the handbook was read line by line to her at the beginning of her employment. This factor and other evidence demonstrate that defendant highlighted the handbook as an integral part of the parties' employment relationship.

■ Whether the language of a promise is sufficiently clear to constitute an offer is a matter for the jury to decide. *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 710 P.2d 1025 (1985); *Finley v. Aetna Life & Casualty Co.*, 5 Conn.App. 394, 499 A.2d 64 (1985).

■ Under circumstances involving more general language, other courts have construed the terms of employee handbooks as being too vague to constitute an offer and, therefore, determined that no contract was created between the employer and employee. *See Sanchez v. The New Mexican*, 106 N.M. 76, 738 P.2d 1321 (1987); *Bauer v. American Freight System, Inc.*, 422 N.W.2d 435 (S.D.1988). However, we find the handbook here to be significantly more detailed than was the case in these contrary holdings. Here, it establishes with specificity defendant's commitment not to discriminate in either employment or remuneration. Thus, the terms of the employee handbook are not so vague that we are compelled to usurp the jury function of determining whether a contract right has been created.

#### B.

Defendant next argues that plaintiff did not rely on the employee handbook to her detriment and that she gave no consideration therefor. We disagree.

■ An employee can accept an employer's unilateral offer of terms in an employee handbook by continued service, and similarly, continued service may constitute consideration. *Continental Air Lines, Inc., v. Keenan, supra.*

■ It is disingenuous for defendant to argue that its sexual equality and pay guidelines, which it uses as integral parts of its employment scheme, have no legal significance and, therefore, do not provide consideration or a basis for an offer of employment to prospective employees.

Indeed, from the evidence presented here, the jury could readily have concluded the opposite is true. From plaintiff's testimony and actions the jury could have readily concluded that persons, like plaintiff, who have historically been discriminated against in the work place, seek employment with those companies which purport to offer equal employment opportunity and pay.

#### C.

Defendant also argues that, even if a contract was formed, there was not sufficient evidence for the jury to find a breach of contract. We disagree and, instead, conclude there is support in the record for finding noncompliance with the terms of the handbook.

Therefore, based upon the language of the "Employee Guidelines" and evidence regarding defendant's use of these guidelines, we conclude the trial court did not err in denying defendant's motion for a judgment notwithstanding the verdict. *See Ek-*

*berg v. Greene, supra.* The evidence presented at trial supports the jury's conclusion and will not be disturbed on appeal. *See Virgil v. Pine,* 176 Colo. 384, 490 P.2d 934 (1971).

## II.

The jury was asked to answer a special interrogatory which stated:

"Do you find that there was a written or implied contract based upon the employee guidelines?"

It answered this interrogatory in the affirmative.

Although the interrogatory may be ambiguous as to whether the jury found for the plaintiff upon a written or upon an implied contract, or both, since neither party objected to the interrogatory at trial, effect must be given to the entire verdict. *See Boynton v. Fox Denver Theaters, Inc.,* 121 Colo. 227, 214 P.2d 793 (1950).

Plaintiff argues that, since defendant's appellate brief is directed solely at the "written contract," this case should be affirmed on the ground that defendant is not contesting the validity of the implied contract. This suggests that the written and implied contracts are different conceptually and factually.

Defendant claims that the arguments made in regard to the "written contract," *i.e.,* the guidelines are a statement of policy and are too vague to constitute an offer, there was no acceptance of the offer by plaintiff, and there was no breach of the contract, also apply to the implied contract. Defendant essentially argues that within the context of this case the terms "written" and "implied" are the same thing. We agree with defendant that its arguments also apply to the implied contract, but disagree that the written and implied contracts are based on the same evidence (the handbook) and are thus one and the same.

When parties manifest their agreement by either written or oral words, the contract is generally said to be express. When the agreement is manifest by conduct, it is said to be a contract implied in fact. *Colo–Tex Leasing, Inc. v. Neitzert,* 746 P.2d 972 (Colo.App.1987).

Implied in fact contracts arise from conduct of the parties which evidences a mutual intention to contract with each other. *A.R.A. Manufacturing Co. v. Cohen,* 654 P.2d 857 (Colo.App.1982). There is no difference in legal effect between express and implied in fact contracts. *Swingle v. Myerson,* 19 Ariz.App. 607, 509 P.2d 738 (1973).

When the existence of a contract is in issue and the evidence is in conflict or admits of more than one inference or conclusion, then it is for the trier of fact to decide whether a contract exists. *I.M.A., Inc. v. Rocky Mountain Airways, Inc., supra.*

Here, it appears the term "written contract" was intended as a basis for the jury to determine whether solely under the employee guidelines there had been an offer and acceptance. We note, however, since the acceptance of the contract was by the conduct of the plaintiff in taking and keeping her job, *see Continental Air Lines, Inc. v. Keenan, supra,* the contract may be more properly denominated as an implied in fact contract, rather than a written or express contract. The jury may have concluded that the guidelines in conjunction with other statements and actions of the parties constituted an implied in fact contract. *See A.R.A. Manufacturing Co. v. Cohen, supra.*

Accordingly, since the implied contract theory of recovery includes evidence other than the employee handbook and since we have already determined that the evidence supports the jury verdict on an express contract theory, we conclude that the evidence supports the jury verdict as to an implied contract between plaintiff and defendant.

Judgment affirmed.

TURSI, J., concurs.

DAVIDSON, J., specially concurs.

Judge DAVIDSON specially concurring:

I agree that the commitments in the employee handbook, particularly the paragraphs describing wage and salary admin-

istration, and the conduct of the parties together establish a contract implied in fact. *See Colo–Tex Leasing, Inc. v. Neitzert,* 746 P.2d 972 (Colo.App.1987). However, I disagree that the circumstances of the case create an express contract. Therefore, I specially concur in the result reached by the majority.

Both contracts implied in fact, as present here, and express contracts require a meeting of the minds. *Colo–Tex Leasing, Inc. v. Neitzert, supra.* In an express contract, the agreement must be manifested in words. In an implied contract, on the other hand, a meeting of minds can be manifested by a combination of words and action. *See* J. Calamari & J. Perillo, *Contracts* § 1–12 (1977). Here, it is the combination that establishes the agreement.

In light of the fact, as the majority notes, that the employee handbook here included detailed wage and salary guidelines and in light of the importance of the actions of both parties in creating the contract, I also write specially to clarify that our decision today does not hold that the general language concerning equal employment opportunity for all in itself creates a contract. *See Conkwright v. Westinghouse Electric Corp.,* 739 F.Supp. 1006 (D.Md.1990); *Lofton v. Wyeth Laboratories, Inc.,* 643 F.Supp. 170 (E.D.Pa.1986).