19 F.3d 533
 64 Fair Empl.Prac.Cas. (BNA) 468,
64 Empl. Prac. Dec. P 43,013,
9 Indiv.Empl.Rts.Cas. (BNA) 456
Stephanie L. STAHL, Plaintiff-Appellee/Cross-Appellant,
v.
SUN MICROSYSTEMS, INC., a Delaware corporation,
Defendant-Appellant/Cross-Appellee.
 Nos. 91-1254, 91-1275, 91-1303 and 91-1307.
 United States Court of Appeals,
Tenth Circuit.
 March 18, 1994.
 
 Steven J. Merker, of Davis, Graham & Stubbs, Denver, CO, for defendant-appellant/cross-appellee.
 Robert J. Truhlar, of Truhlar and Truhlar (Kathryn E. Miller, of Miller, Leher & Steiert, P.C., with him on the brief), Littleton, CO, for plaintiff-appellee/cross-appellant.
 Before SEYMOUR, Chief Judge, McKAY, and LOGAN, Circuit Judges.
 SEYMOUR, Chief Judge.
 
 
 1
 Stephanie Stahl brought this action against Sun Microsystems, Inc. (Sun), alleging that Sun breached its employment contract with her, breached an express covenant of good faith and fair dealing, interfered with her business opportunities in violation of public policy, breached promises to her upon which she had relied, and discriminated against her on the basis of sex in violation of 42 U.S.C. Secs. 2000e et seq. (Title VII). Sun filed a motion for partial summary judgment on the claims for breach of contract and of an express covenant of good faith and fair dealing, which the district court denied. See Stahl v. Sun Microsystems, Inc., 775 F.Supp. 1394 (D.Colo.1991). After the court dismissed the business opportunity and promissory estoppel claims, Ms. Stahl received a jury verdict in the amount of $500,000 on her claims for breach of contract and of an express good faith covenant. The Title VII claim was tried to the court, which ruled in favor of Sun.
 
 
 2
 Sun appeals the jury verdicts, contending that Colorado law would not recognize a claim for breach of an express covenant of good faith and fair dealing as set out in the jury instructions, that the breach of contract claim was also erroneously submitted to the jury, and that the evidence on damages was too speculative to support the jury verdict. Ms. Stahl cross-appeals, asserting that the trial court erred in refusing to send her claims for loss of business opportunity and promissory estoppel to the jury. She also asserts that the court committed legal error when reviewing the evidence relevant to her Title VII claim, and that the court erroneously excluded evidence relevant to this claim. We affirm.
 
 I.
 
 3
 Ms. Stahl began her employment as a Sun sales representative in June 1987, selling Sun computers, computer components and software. Several of her major customers were government contractors, including Hughes Aircraft Company. Hughes requested that Ms. Stahl obtain a security clearance so that she could have access to classified information and provide better service to the Hughes account. She obtained the clearance.
 
 
 4
 Ms. Stahl's first year with Sun was very successful. She exceeded her sales goal by nearly fifty percent and developed eight new customers, four of which were prime government contractors. She was asked to join the Sunrise Club, an honor given to top sales people entitling them to vacation trips at Sun's expense.
 
 
 5
 In July 1988, Ms. Stahl had a meeting with her regional manager, Neil Knox. At this meeting, Mr. Knox asked her for information about her clients that would have required her to reveal classified information. When Ms. Stahl refused to give him the information, Mr. Knox became angry and accused her of being a "prima donna." Ms. Stahl's relationship with Sun apparently began to deteriorate after this incident.
 
 
 6
 Ms. Stahl's district manager was Darrel Waters, who reported to Mr. Knox. Within a month of Ms. Stahl's meeting with Mr. Knox, Mr. Waters put her on a performance improvement program. The program imposed very high sales goals as a disciplinary measure even though Ms. Stahl had recently booked several large orders. Although Ms. Stahl met the program goals, the program was continued. In January 1989, Mr. Waters assigned all of Ms. Stahl's accounts except Hughes to another sales representative who did not have a security clearance. Ms. Stahl thus lost all but one of the accounts upon which her yearly sales goal was based, but her goal was not reduced. She nonetheless met the goal and was again made a member of the Sunrise Club. In August 1989, the Hughes account was taken away from her. In addition to the loss of these accounts, Ms. Stahl also presented evidence that she had been harassed and intimidated by Mr. Knox and Mr. Waters. She sought damages for lost wages, commissions, and benefits, as well as for diminution of her future earning capacity.
 
 II.
 
 7
 Ms. Stahl's contract claim is grounded on her assertion that Sun created a contractual obligation to her by promulgating and distributing to her its Equal Employment Opportunity Policy (EEO Policy) and a document entitled "Sun Values." The EEO Policy stated that all personnel actions "shall be based upon individual ability, interests, and performance." Aplt.App. at 134. The Sun Values document set out five value statements that "describe what we believe to be the most important and fundamental principles of the way we do business at Sun." Id. at 136. The value statement entitled "A Positive Work Environment" included the following: "We are clear about expectations and provide rewards and recognition on the basis of contributions. We treat people equitably and consistently." Id. at 137. Ms. Stahl asserted to the jury that by reassigning her accounts to others without legitimate justification, Sun violated its contractual duty to treat her equitably and based on her performance.
 
 A.
 
 8
 On appeal, Sun raises several legal challenges to the breach of contract claim, but does not allege that the evidence was insufficient to support it. First, Sun contends as a matter of law that because the sales plan governing Sun's relationship with its sales representatives gave Sun the right to reassign accounts, Ms. Stahl could not assert a breach based on such a reassignment. Sun concedes that this argument was not properly raised at trial. See Aplt.Br. at 27 n. 12.
 
 
 9
 This court does not ordinarily consider arguments that were not properly presented to the trial court. See Daigle v. Shell Oil Co., 972 F.2d 1527, 1539 (10th Cir.1992); Cavic v. Pioneer Astro Indus., Inc., 825 F.2d 1421, 1425 (10th Cir.1987). We have discretion to depart from the general rule "when we are presented with a strictly legal question the proper resolution of which is beyond doubt or when manifest injustice would otherwise result." Daigle, 972 F.2d at 1539. We conclude that these exceptions are not available here.
 
 
 10
 Sun contends that its right to reassign accounts is in essence a disclaimer of its stated promise to treat its employees equitably, and that this disclaimer prevents the formation of a contract based on that promise. Sun has not, however, shown beyond doubt that this legal issue must be resolved in its favor. Indeed, Colorado courts have held that similar disclaimers do not as a matter of law prevent the formation of a contract based on promises set out in an employee manual. See, e.g., Allabashi v. Lincoln Nat'l Sales Corp., 824 P.2d 1, 2-3 (Colo.App.1991). Accordingly, we decline to address this argument further.
 
 
 11
 Sun also contends that sending this claim to the jury was erroneous because it was based in part on Sun's antidiscrimination policy. Sun argues that the jury could have decided the claim on the basis of sex discrimination and that the issue of sex discrimination is one to be decided by the court. However, the jury was not instructed on the elements of sex discrimination. Rather, the jury was told that in order to find Sun liable for breach of contract, it had to find that Sun had undertaken and breached a contractual obligation to treat its employees equitably. Whether the conduct that the jury found to have violated this obligation may have also constituted illegal sex discrimination is irrelevant to the contract claim. Conduct can clearly constitute both a contractual breach and illegal sex discrimination. Indeed, Colorado law expressly recognizes that a contractual obligation to treat employees equitably can arise from an employer's representations that it will not discriminate on the basis of sex. See Tuttle v. ANR Freight Sys., Inc., 797 P.2d 825, 827-28 (Colo.App.1990).
 
 
 12
 Finally, Sun argues that the representations underlying the contract claim are too vague and indefinite to form an enforceable contract. We disagree. "[W]hether an employer and employee have entered into a contract based upon an employee handbook is generally a question of fact for the jury." Likewise, "[w]hether the language of a promise is sufficiently clear to constitute an offer is a matter for the jury to decide." Id. at 828.
 
 
 13
 The court in Tuttle was faced with a similar argument. There the court concluded that the language used by the employer in describing its commitment to equitable treatment, the specific standards used by the employer to determine compensation, and the employer's emphasis on its handbook were sufficient to create a jury question on whether a contract existed with respect to the employer's promise not to "discriminate in either employment or remuneration." Id.
 
 
 14
 Those factors compel the same result here. The language in Sun's EEO Policy and in the Sun Values document demonstrates the requisite level of specificity and commitment required to send the matter to the jury. The EEO Policy states that: "All Personnel actions, including recruitment, selection, training, compensation, promotion, and recreation, shall be based upon individual ability, interests, and performance." Aplt.App. at 134 (emphasis added). The Sun Values document states: "We are clear about expectations and provide rewards and recognition on the basis of contributions. We treat people equitably and consistently." Id. at 137 (emphasis added). Mr. Knox testified that under the EEO Policy, the company was committed to treating "all individuals totally equally and above board." Aplee.Supp.App., vol. II, at 305. Sun also has an elaborate sales representative incentive compensation plan which is designed "to compensate the Field Sales Representative (participant) based on performance." Aplt.App. at 140. These documents and the emphasis that Sun placed on them in its relations with Ms. Stahl are sufficient to support a finding that Sun made an enforceable promise to treat its employees equitably with respect to compensation.[1]
 
 B.
 
 15
 Finally, Sun argues that the evidence on damages was too speculative to send the issue to the jury. "To recover actual damages for a breach of contract, the plaintiff must present sufficient evidence to prove the amount of damages incurred." Pomeranz v. McDonald's Corp., 821 P.2d 843, 848 (Colo.App.1991). This evidence must allow a jury to determine the amount with "reasonable certainty." Id.
 
 
 16
 Ms. Stahl testified that during her first two years with Sun she earned about $130,000 a year. After her accounts were taken away, she made around $60,000 a year. Aplee.Supp.App., vol. I, at 163-64. Ms. Stahl also presented testimony on her damages through Dr. Jane Lillydahl, an expert in economics and human factors in employment, who offered an opinion on Ms. Stahl's past and future economic losses. Dr. Lillydahl stated that Ms. Stahl's losses up to the time of trial totalled $147,000, and that her projected losses for the following four years would be $366,000. Aplee.Supp.App., vol. II, at 241. Dr. Lillydahl further testified that Ms. Stahl's total career losses would amount to $1,550,500. Id. This evidence is more than adequate to support the jury's award of $500,000.
 
 III.
 A.
 
 17
 In her cross appeal, Ms. Stahl argues that the district court's rejection of her sex discrimination claim was based on an impermissibly limited view of the evidence.[2] The court stated at several points in its ruling for Sun that the only credible evidence of gender-based discrimination was Mr. Knox' reference to Ms. Stahl as a prima donna. Ms. Stahl contends on appeal that these statements by the district court indicate that the court did not properly consider other evidence she presented tending to establish a sexual harassment claim premised on a hostile work environment as set out in Hicks v. Gates Rubber Co., 833 F.2d 1406 (10th Cir.1987). Sun counters that Ms. Stahl did not base her sex discrimination claim below on a hostile work environment under Hicks.
 
 
 18
 Our review of the record indicates that Ms. Stahl did raise below the issue of sexual harassment based on a hostile work environment. Although it is true that she focused her Title VII claim primarily upon her assertion of disparate treatment, the pretrial order recites that Ms. Stahl claimed to be the victim of a hostile work environment, see Aplt.App. at 25, and the district court referred to this theory in its order, id. at 121. Accordingly, we turn to the merits of her argument.
 
 
 19
 [H]ostile work environment harassment arises when sexual conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." "For [hostile work environment] sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.' " Whether the sexual conduct complained of is sufficiently pervasive to create a hostile or offensive work environment must be determined from the totality of the circumstances.
 
 
 20
 Hicks, 833 F.2d at 1413 (citations omitted). In Hicks we held that, when determining whether a plaintiff has established hostile work environment sexual harassment, a trial court should consider any harassment or unequal treatment based on sex even if those acts are not themselves sexual in nature. Id. at 1415. We also held that, because one of the critical inquiries in this claim is the environment, "incidents of sexual harassment directed at employees other than the plaintiff can be used as proof of the plaintiff's claim of a hostile work environment." Id.
 
 
 21
 In this case, Ms. Stahl presented evidence that Mr. Knox used vulgar language when referring to female Sun employees, and that at least one other female employee had filed an internal complaint on the basis of Mr. Knox' conduct toward her. Ms. Stahl contends that the Title VII claim must be remanded for retrial under Hicks because the district court did not specifically address this evidence in finding that she was not the victim of sex discrimination.[3] We disagree.
 
 
 22
 We begin by pointing out that this case is distinguishable from Hicks. There the trial court was of the view that a hostile work environment did not present a cognizable claim of sexual harassment. That court consequently failed to consider whether the plaintiff's evidence was sufficient to establish such a claim. We therefore remanded for reconsideration because the court's findings were based on an erroneous view of the law and the plaintiff had presented evidence which, if believed by the factfinder, could establish her claim. Here, to the contrary, the district court clearly recognized that Ms. Stahl had alleged sexual harassment on the basis of a hostile work environment and that such a claim was viable under Title VII.
 
 
 23
 We thus must decide whether a remand is required because the court failed to specifically address the testimony by other Sun employees concerning Mr. Knox' behavior toward women employed at Sun. "Findings of fact are sufficient if they indicate the factual basis for the court's general conclusion as to ultimate facts and are broad enough to cover all material issues." Nulf v. International Paper Co., 656 F.2d 553, 561 (10th Cir.1981). "The exclusion of certain testimony from the findings is not necessarily an error." Id.; see also Krieger v. Gold Bond Bldg. Prods., 863 F.2d 1091, 1097-98 (2d Cir.1988).
 
 
 24
 The court's findings here are adequate to inform us of the factual basis for its decision. Moreover, we discern no grounds for concluding that the court proceeded under an erroneous view of the law or failed to give Ms. Stahl's evidence due consideration. The court stated that it was persuaded by the testimony of Mr. Knox and Mr. Waters that Ms. Stahl's gender played no part in their treatment of her. The court further found that Ms. Stahl's job performance was not satisfactory and that she did not cooperate with management. The court also found significant the lack of disparity in the salaries of male and female Sun employees, and noted that Ms. Stahl was replaced on the Hughes account by another woman. These findings are sufficient to permit us to conclude that the lower court considered and rejected Ms. Stahl's claim that she was the victim of sexual discrimination based on a hostile work environment. The court simply credited the evidence tending to show that Mr. Knox and Mr. Waters did not treat Ms. Stahl as they did because of her gender. If the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment.
 
 
 25
 Given the district court's findings, its failure to specifically address the evidence to which Ms. Stahl refers on appeal does not require a remand. The district court need not "make findings as to every detail," Nulf, 656 F.2d at 561, nor "mention evidence it considered to be of little value," Krieger, 863 F.2d at 1098. Accordingly, we affirm the district court's disposition of the Title VII claims.[4]
 
 B.
 
 26
 Finally, we turn to Ms. Stahl's argument that the district court abused its discretion in refusing to admit evidence that Mr. Waters had a sexual relationship with Ms. Cox, his administrative assistant. Ms. Stahl argues that this evidence was improperly excluded because it bore on the credibility of Mr. Waters and Ms. Cox, both of whom testified. Even assuming this evidence was relevant to credibility, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. We will not reverse the district court's balancing of probity and prejudice "absent a clear abuse of discretion." C.A. Assocs. v. Dow Chemical Co., 918 F.2d 1485, 1489 (10th Cir.1990). In our view, Ms. Stahl's argument as to why the evidence was relevant to credibility indicates that its probative value was slight, while the potential for unfair prejudice is obvious.
 
 
 27
 Ms. Stahl also contends that this evidence was relevant to her Title VII claim because it tended to show that the employer favored female employees who submitted to sexual advances. Under this argument, however, the evidence would only be relevant to a Title VII claim based on quid pro quo sexual harassment. See Hicks, 833 F.2d at 1413 ("Quid pro quo harassment occurs when submission to sexual conduct is made a condition of concrete employment benefits.") Because Ms. Stahl did not assert such a claim, her argument is without merit. In sum, we conclude that the district court did not clearly abuse its discretion in refusing to admit this evidence.
 
 
 28
 We AFFIRM the jury verdict in favor of Ms. Stahl on her breach of contract claim, and we AFFIRM the district court ruling for Sun on the Title VII claims.
 
 
 
 [1]
 Our conclusion that the breach of contract claim was properly sent to the jury eliminates the need to address several other arguments made on appeal. Sun challenges the claim for breach of an express covenant of good faith and fair dealing. However, the damages that would have been awarded on that claim are identical to the damages awarded on the breach of contract claim, and the jury was told to award damages only once. Indeed, we are hard pressed under the circumstances of this case to find a significant distinction between these two claims. Accordingly, even if we were to hold improper the claim based on an express good faith covenant, the breach of contract claim is sufficient to support the jury verdict
 Similarly, we need not address Ms. Stahl's argument that her promissory estoppel claim should have gone to the jury. Ms. Stahl concedes that the damages on this cause of action would be coextensive with those for the breach of contract. The same is true for any actual damages arising from Ms. Stahl's claim that Sun interfered with her business opportunities in violation of public policy. Although we recognize that punitive damages could also be awarded on this claim, Ms. Stahl has presented no argument or authorities on appeal to support a claim for punitives and we therefore deem the issue abandoned. See Boone v. Carlsbad Bancorp Inc., 972 F.2d 1545, 1554 n. 6 (10th Cir.1992).
 
 
 [2]
 We address the Title VII claim because, even assuming that the actual damages Ms. Stahl could recover on this claim would be coextensive with those she recovered on her breach of contract claim, see note 1 supra, Ms. Stahl would in addition be entitled to seek attorneys fees if she were to prevail on her Title VII cause of action
 
 
 [3]
 We note that although on appeal Ms. Stahl relies heavily on Hicks v. Gates Rubber Co., 833 F.2d 1406 (10th Cir.1987), she did not cite Hicks to the trial court or argue its applicability to her claim
 
 
 [4]
 In so doing, we note Ms. Stahl does not contend that the court's findings on the Title VII claims are clearly erroneous