**Larry C. JOHNSON, Plaintiff,**

v.

**CADILLAC PLASTICS GROUP, INC., a Michigan Corp. d/b/a Plasticrafts, Inc., Defendant.**

**Civ.A. No. 95–K–1416.**

United States District Court,
D. Colorado.

Dec. 4, 1995.

Richard C. LaFond, Charlotte N. Swee-ney, LaFond & Clausen, L.L.C., Denver, CO, for Plaintiff.

Richard S. Mandelson, Mary Price Birk, Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Plaintiff Larry C. Johnson initiated this action on June 1, 1995, asserting five claims against his former employer Cadillac Plastic Group, Inc. ("Cadillac") for age discrimination, breach of employment contract and promissory estoppel. Before me now is Cadillac's motion to dismiss Johnson's ADEA retaliation claim,[1] as well as Johnson's state law claims for breach of employment contract and promissory estoppel.[2]

Cadillac contends Johnson's retaliation claim is barred for failure to exhaust administrative remedies. The company maintains the retaliation claim is substantively different from his discriminatory discharge claim, and

---

1. Johnson asserts two claims under the Age Discrimination in Employment Act of 1967 (ADEA); one for discriminatory discharge under 29 U.S.C. § 623(a)(1), and one for retaliation under § 623(d). Cadillac challenges only the latter in the instant motion to dismiss.

2. Johnson concedes his state age-discrimination claim is time-barred and states the claim was inadvertently included in his Complaint. *See* Resp.Mot. Dismiss at 6. Johnson's Third Claim for Relief alleging violations of Colo.Rev.Stat. § 24–34–402(1)(a) is therefore dismissed with prejudice and will not be considered here.

argues Johnson should have filed a separate charge with the Equal Employment Opportunity Commission (EEOC) or the Colorado Civil Rights Commission as to the retaliation claim in order to provide them proper notice of it. Cadillac also contends Johnson's state law claims should be dismissed because the equal opportunity statement on which those claims are based constitutes neither an express contract nor an independent promise upon which Johnson reasonably could have relied.

Jurisdiction over Johnson's ADEA claims exists under 29 U.S.C. § 626(c)(1) and 28 U.S.C. § 1331. Supplemental jurisdiction exists over the state law claims. I have reviewed thoroughly the parties' briefs on Cadillac's motion and find oral argument will not materially aid its resolution. I grant Cadillac's motion to dismiss as to Johnson's state law claims, and deny it in all other respects.

## I. FACTS

Johnson began his employment as a controller/manager with Plasticrafts, Inc. in March 1969. When Cadillac purchased Plasticrafts in 1986, Johnson accepted a position as an operations manager with the successor company. Johnson received a copy of Cadillac's Associate Handbook (the "Handbook"), which set forth Cadillac's employment and benefits policies.

From the time of the sale until 1990, Johnson performed satisfactorily, was given increased responsibilities and received regular salary increases. Between 1990 and 1993, however, Johnson was the only one of five managers not to receive a salary increase. Johnson contends he began inquiring as to why he was being treated differently, including whether part of the reason was his age. In May 1993, Johnson states he was told there would be no pay raises for him in the foreseeable future.

Johnson wrote a letter to his superiors in July 1993, expressing his concern that his position was "deteriorating" and seeking solutions to the perceived problems. *See* Compl. at ¶ 40. Two weeks later, Johnson was told his position was being eliminated as part of a consolidation. Just before he was terminated, Johnson alleges Cadillac hired two new, younger, less qualified operations managers—one on the East coast and one on the West coast. *Id.* at ¶¶ 47–49. Johnson contends this was contrary to Cadillac's "reduction in force" policy in effect at that time, which required employees with less seniority to be laid off first. Johnson was not offered either new position and was not asked if he was willing to relocate to either coast to accept them.

Following his discharge, Johnson filed a charge of age discrimination with the Colorado Civil Rights Division. He received a Notice of Right to Sue from the Equal Employment Opportunity Commission (EEOC) on March 3, 1995, and initiated this lawsuit on June 1, 1995.

## II. MERITS

### A. Retaliation

Cadillac contends Johnson's failure specifically to identify retaliation as a basis for the charge filed with Colorado Civil Rights Commission bars his claim. I disagree.

■■■■ The filing of a charge with the EEOC and the Colorado Civil Rights Commission (CCRC) is a prerequisite to bringing a civil suit for employment discrimination. 29 U.S.C. § 626(d), *applied in Borumka v. Rocky Mountain Hosp. & Medical Serv.*, 599 F.Supp. 857, 859 (D.Colo.1984). A civil claim must be "reasonably related" to the administrative charge filed to withstand a motion to dismiss. *Id.* At issue is " 'whether the defendant had sufficient notice from the administrative charge of the alleged kinds and areas of discrimination and whether the administrative agencies and employers involved had an opportunity to work on a conciliation agreement for voluntary compliance in the challenged areas.' " *Reiter v. Center for Consol. Sch. Dist. No. 26–JT*, 618 F.Supp. 1458, 1461 (D.Colo.1985) (quoting *Metcalf v. Omaha Steel Castings Co.*, 507 F.Supp. 679, 685 (D.Neb.1981)).

Cadillac contends Johnson's charge failed adequately to notify it of any complaint regarding retaliation and thus precluded any opportunity for conciliation as to that claim. It therefore concludes the retaliation claim

should be dismissed. Johnson counters that Cadillac's correspondence with the CCRC indicates an awareness of retaliation being a possible allegation. Specifically, Johnson references an October 14, 1994, letter from William Watson to the CCRC in which Cadillac allegedly concedes Johnson raised the issue of age discrimination before he was terminated. Johnson also points to numerous references by Cadillac in other letters to the CCRC to "other" claims it was insisting were not the reasons for Johnson's discharge. *See* Resp.Mot.Dismiss, Attachs. 1–5.

Administrative charges of discrimination need not be pleaded with great particularity. *See Reiter*, 618 F.Supp. at 1460. Cadillac does not dispute that Johnson's charge was adequate to put it on notice of a claim for discriminatory discharge under the ADEA. Johnson's assertion that he complained to his superiors of possible age discrimination in the awarding of pay raises *before* he was terminated is sufficient to create an inference that Cadillac knew or should have known the charge encompassed a claim for retaliation under the ADEA as well. Accordingly, I deny Cadillac's motion to dismiss Johnson's Second Claim for Relief for retaliation under 29 U.S.C. § 623(d).

### B. *State Law Claims*

Under Colorado law, an individual hired for an indefinite period of time is an at-will employee whose employment can be terminated by either party without cause and without notice. Generally, an at-will employee's termination will not give rise to a cause of action. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo.1987), *applied in Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1464 (10th Cir.1994). An employer may be held liable for the discharge of an at-will employee, however, where an implied contract arises out of company policy and employment manuals, or where an employee relies on the policies and manuals to his detriment. *Id.* at 711–12. Johnson's state law claims in this case invoke both theories of relief.

### 1. *Breach of Implied Contract*

The Tenth Circuit in *Vasey* thoroughly reviewed the Colorado law of implied contracts based on employee manuals. To succeed on an implied contract theory under Colorado law, a discharged employee must first show that in promulgating an employment manual or policy, the employer intended to make an offer to the employee—" 'that is, the employer manifested his willingness to enter into a bargain in such a way as to justify the employee in understanding that his assent to the bargain was invited by the employer and that the employee's assent would conclude the bargain.' " *Vasey*, 29 F.3d at 1464 (quoting *Continental*, 731 P.2d at 711–12, and ruling employment policies did not give rise to implied employment contract). In addition, the employee must show that his initial or continued employment constituted acceptance of and consideration for those procedures. *Id.* (citing *Continental* at 711). An offer must also contain terms " 'sufficiently definite to enable the court to determine whether the contract has been performed.' " *Id.* (quoting *Stice v. Peterson*, 144 Colo. 219, 355 P.2d 948, 952 (1960)). Finally, while the existence of an implied contract is normally a factual inquiry for the jury, *id.* (citing *Tuttle v. ANR Freight Sys., Inc.*, 797 P.2d 825, 828 (Colo.App.1990)), "the issue may be decided as a matter of law if the alleged promises are nothing more than 'vague assurances.' " *Id.* (citing *Dupree v. United Parcel Serv.*, 956 F.2d 219, 222 (10th Cir.1992)).

Johnson, an otherwise at-will employee, alleges the equal opportunity statement in Cadillac's Handbook constituted an offer of employment based on its terms. Johnson relies on *Tuttle* and *Stahl v. Sun Microsystems, Inc.*, 19 F.3d 533 (10th Cir.1994), cases in which purportedly [3] similar handbook provisions were deemed sufficiently specific to send the question of whether an implied contract was created to a jury. Johnson further asserts that he accepted and gave consideration for Cadillac's "offer" by agreeing to

---

**3.** I note with dismay that Johnson has neither submitted, nor even attempted to paraphrase, the particular Handbook provision at issue here.

Where the adequacy of Johnson's claim turns on the relative vagueness or definiteness of the specific language used, this omission is significant.

work for Cadillac after the purchase of Plasticrafts, and contends Cadillac breached the resulting contract when it terminated him based on his age. Cadillac contends its equal opportunity statement provides nothing more than vague assurances of the type deemed insufficient in *Vasey* to support a claim for implied contract.

In *Vasey,* the Tenth Circuit found a credo and equal opportunity memorandum stating defendant's commitment "to just management and equality for all" and to "provide equal employment . . . regardless of sex, age, handicap, religious belief, honorable military status or national origin" insufficient as a matter of law to constitute an enforceable implied contract. 29 F.3d at 1465. The court distinguished the statements in *Tuttle* and *Stahl*—which were similar to those in *Vasey*—by noting they not only stated the companies' equal opportunity policies, but also set forth "detailed salary" and "lay-off guidelines" and "emphasized personnel decisions involving compensation." *Id.* Because the *Vasey* credo and equal opportunity memorandum did not contain such guidelines "or other guarantees of employment," they were deemed "too indefinite to constitute a contractual offer which would enable a court to determine whether a contract has been performed." *Id.,* (citing *Dupree,* 956 F.2d at 222).

Johnson complains that the Tenth Circuit in *Vasey* "does not fairly assess *Tuttle* and *Stahl.*" Resp.Mot. Dismiss at 7. He argues the court in *Tuttle* did not find that an EEO policy must be accompanied by salary guidelines to be sufficiently definite under *Continental,* and suggests the presence of the compensation guidelines in *Tuttle* was immaterial. *See id.* ("[i]t just so happened that both policies were at issue in *Tuttle*"). I disagree. It is clear upon review of the *Tuttle* opinion, and in particular Judge Davidson's concurrence, that the presence of detailed salary guidelines was critical to the court's ruling. *See Tuttle,* 797 P.2d at 830 (Davidson, J. concurring).

■ Alternatively, Johnson argues Cadillac's equal opportunity statement is like the one in *Tuttle* because the Handbook also includes a section entitled "BENEFITS."

Again, Johnson fails either to attach or paraphrase Cadillac's benefits policies, electing instead to submit a copy of the Handbook's Table of Contents. *See* Resp.Mot. Dismiss, Attach. 6. The fact Cadillac's Handbook contains a separate section on benefits does not bring it within the purview of *Tuttle.* This is especially true where, as here, the breach alleged is of the defendant's equal opportunity provision only, and not its benefits policy. *C.f. Tuttle* at 827 (alleged breach was of compensation policies). I find it is *Vasey* that provides the most apt analogy to the facts of this case, and Johnson's failure to allege anything beyond the vague assurances rejected by the *Vasey* court requires the dismissal of his implied contract claim.

## 2. *Promissory Estoppel*

Even if Cadillac's equal opportunity statement is insufficiently specific to constitute an offer of employment under an implied contract theory, Johnson contends Cadillac may nevertheless be held liable for failing to comply with it under a theory of promissory estoppel. Johnson argues Cadillac reasonably should have expected employees to rely on the statement as setting forth the company's termination policy, and avers he in fact relied on the statement to his detriment. Cadillac incorporates by reference the arguments made with respect to Johnson's implied contract claim, and seeks to dismiss the promissory estoppel claim on the same grounds.

■ To support a claim for promissory estoppel based on policy provisions in an employee handbook, plaintiff must demonstrate that (1) his employer reasonably should have expected employees to consider the handbook as a commitment to follow the policy stated; (2) the employee reasonably relied on the policy to his detriment; (3) and injustice could only be avoided by enforcement of the policy. *Continental,* 731 P.2d at 712 (considering termination procedures). The essence of Cadillac's argument is that a policy statement too vague to constitute an offer of employment under a theory of implied contract is also too vague to create on the part of an employer a reasonable expectation of reliance. I agree.

■ When an employee fails to allege sufficient facts regarding the specificity of an employment policy to create an inference that the employer· intended to be bound thereby, the employee also fails to create an inference that the employer reasonably should have expected his employees to rely on the statement. Johnson's allegations so fail, and Cadillac's motion to dismiss his promissory estoppel claim is granted.[4]

Accordingly, Cadillac's motion to dismiss is DENIED as to Johnson's claim for retaliation under the ADEA·and GRANTED as to Johnson's state law claims for breach of implied employment contract and promissory estoppel.

---

4. Cadillac also argues Johnson's breach of contract and promissory estoppel claims are preempted by the ADEA and the federal law applying it. Because I conclude Johnson's state law claims fail as a matter of law under Fed. R.Civ.P. 12(b)(6), I do not reach the issue of preemption.