**VICTORIA AIR CONDITIONING,
INC., Appellant,**

v.

**SOUTHWEST TEXAS MECHANICAL
INSULATION COMPANY, et al.,
Appellees.**

No. 13–91–603–CV.

Court of Appeals of Texas,
Corpus Christi.

March 4, 1993.

Rehearing Overruled April 8, 1993.

Cynthia T. Sheppard, Houston, Marek & Griffin, Victoria, for appellant.

Mark C. Rains, Michael A. Johnson, Cullen, Carsner, Seerden & Cullen, Victoria, for appellees.

Before NYE, C.J., and GILBERTO HINOJOSA, and DORSEY, JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

Appellant, Victoria Air Conditioning, Inc., (VAC) appeals from a jury finding that it agreed to discharge Tommy Nabors, appellee, from liability on a contract, and that VAC's attorney's fees were zero. Nabors cross-appeals on the grounds that the trial court erroneously submitted the charge to the jury, and that VAC's appeal is frivolous and without merit. We affirm.

VAC entered into a $225,000 subcontract in August, 1988, with Southwest Texas Mechanical Insulation Company (SWT), a partnership comprised of Nabors and Jupe. The contract was signed by Jupe on behalf of the partnership. Pursuant to the contract, SWT provided insulation services for VAC in San Antonio, Texas. The undisputed evidence shows that Jupe and Nabors were partners at the time of contract formation.

The primary issue in this case is whether an agreement to discharge Nabors from liability could be inferred from the course of dealing between VAC, Jupe and Nabors.

Jupe and Nabors served different functions in the partnership. Jupe was VAC's "contact person" and handled the financial and business affairs of SWT. Nabors was responsible for field operations, and SWT's equipment was warehoused at his residence in Somerset, Texas.

On February 28, 1989, Nabors and Jupe dissolved their partnership. Nabors en-

tered into a buy-out agreement with Jupe in which he sold his interest in SWT to Jupe for $2,500. On the same day, Nabors filed a notice of abandonment of assumed name certificate with the Secretary of State's office, reflecting the disposition of his 50% interest in SWT. VAC did not receive a copy of this notice. Sometime later, SWT's insulation equipment was transferred from Nabors' premises to Jupe's possession. From then on, Nabors had no more involvement with SWT. Jupe continued the insulation project with VAC.

Approximately one month after dissolution, Nabors created his own insulation company, Navco Insulation. Nabors testified that at this time he also told Frederick Von Behrenfeld, VAC's Project Manager, that he was no longer involved with SWT, but that he was interested in bidding on new jobs in his capacity as Navco Insulation. Because Jupe was SWT's contact person, Behrenfeld had only met Nabors three or four times. Nonetheless, Behrenfeld testified that he knew in February, 1989, that Nabors was "no longer involved in the company." Behrenfeld acknowledged that he had no subsequent contacts with Nabors with regard to SWT.

At trial, a series of letters and change orders were introduced into evidence by both parties on the subjects of VAC's knowledge of the dissolution of SWT's partnership, and the inferred agreement between VAC, Jupe and Nabors. The first letter, dated June 21, 1989, was the first warning of nonperformance of the contract. From Behrenfeld, the letter was addressed to Jupe at SWT's new address, "Highway 87 East," and the salutation read "Gentlemen." Nabors did not receive a copy of the letter.

After the first letter, VAC attempted to ensure compliance with the contract by negotiating with Jupe. Benjamin Heilker, Jr., President and owner of VAC, drove from the Victoria VAC office to the San Antonio VAC office to meet with Jupe, but never met with, nor attempted to contact, Nabors. Jupe promised to have the required materials on hand and to report daily to the San Antonio VAC office. VAC promised to fund SWT's payroll, and offered to permit the storage of SWT's insulation materials on VAC premises.

Two "change orders" resulted from this meeting. Both contained SWT's new address at Highway 87 East, San Antonio, and were authorized by Jupe, who signed his name and hand-wrote "Southwest Texas Mechanical Insulation Corp." above the signature. The evidence showed that a change order made prior to the dissolution of the partnership in February reflected SWT's old address at P.O. Box 512, Somerset Texas. When authorizing this earlier change order, Jupe merely signed his name, without the reference to the company. Furthermore, the partnership's assumed name certificate on file at the Secretary of State's office referred to the partnership as "company" and not "corporation."

A second letter from VAC committed to writing the promises made during negotiations between Heilker and Jupe. The letter, dated June 29, 1989, was from Heilker and addressed to Jupe at SWT's old address at P.O. Box 512, Somerset, Texas. The salutation read "Dear Charlie." It had Jupe's notarized signature, and five copies were sent to VAC employees and officers. Nabors did not receive a copy of the letter.

A third letter was sent on August 28, 1989, to Jupe from Heilker. It was addressed to SWT's old address at P.O. Box 512, Somerset, Texas. The letter begins "Dear Charlie" and states that VAC "has attempted to contact you many, many times and you have failed to respond." Copies were sent to VAC employees and officers, but not to Nabors individually.

A week later, August 31, 1989, Heilker sent a default letter to Jupe at SWT's new address at Highway 87 East. The salutation read "Dear Mr. Jupe." The letter states that "We have been unable to locate you by any means," and that VAC would have preferred that SWT completed the job. As a final parenthetical, the letter states, "Come out from your hiding place." Copies were sent to VAC employees and officers and to "All Employees of South-

west Texas Mechanical Insulation Co.," but not to Nabors individually.

Behrenfeld and Heilker testified that VAC never tried to contact Nabors individually, but that they presumed that all correspondence was reviewed by Nabors. They testified that the references to "you" in the letters referred to both Jupe and Nabors as a partnership and not to Jupe individually.[1]

VAC complains by its first two points of error that no evidence or insufficient evidence supports the jury's finding that VAC, Jupe and Nabors agreed to discharge Nabors from liability on the contract. VAC denies that the course of dealing between VAC and Jupe was the type from which one could infer such an agreement, arguing that, because a meeting of the minds did not exist, no implied agreement could have occurred.

 In a no evidence or legal sufficiency challenge, the appellate court considers only the evidence and inferences, when viewed in their most favorable light, that tend to support the jury's finding, and disregards all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988); *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987). If the appellate court finds any evidence of probative force to support the challenged finding, the point of error must be overruled. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988).

 In reviewing a factual insufficiency challenge the court of appeals must examine all of the evidence. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986). However, it is the jury's province, as the trier of fact, to judge the credibility of witnesses and the weight to be given their testimony. *Walter Baxter Seed Co. v. Rivera,* 677 S.W.2d 241, 244 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). An appellate court may not interfere with the jury's resolution of conflicts in the evidence. *Id.* If the record contains conflicting evidence on an issue, the jury's verdict on such issues is generally regarded as conclusive. *Montgomery Ward & Co. v. Scharrenbeck,* 204 S.W.2d 508 (Tex. 1947). After considering and weighing all of the evidence, the appellate court will set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that the result is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 179 (Tex. 1986).

In the instant case, the charge asked whether an agreement existed between VAC, Jupe and Nabors to discharge Nabors from liability on the contract. The jury was instructed that such an agreement could be inferred from the course of dealing between VAC and Jupe if VAC had knowledge of the dissolution.

 The general rule is that the dissolution of a partnership does not of itself discharge any existing liabilities of a partner. TEX.REV.CIV.STAT.ANN. art. 6132b § 36(1) (Vernon 1970). However, an exception to the general rule exists when the retired partner, the person continuing the partnership's business, and the partnership creditor agree that the retired partner will be discharged from liability.[2] *Id.* at § 36(2). Furthermore, such an agreement

---

1. We note that, assuming Mr. Behrenfeld and Mr. Heilker are born and bred Texas boys, they have been properly schooled in the etiquette and finesse of the Texas vernacular, and thus are fully cognizant of the fact that, when addressing more than one person, the term "ya'll" is used! Although we are not prepared to take judicial notice of this well-known fact (nor do we base our decision on it), we are compelled to point out this probable misuse of the term "you" when addressing more than one citizen of the sovereign State of Texas.

2. Section 36 of the Texas Uniform Partnership Act provides as follows:

(1) The dissolution of the partnership does not of itself discharge the existing liability of any partner.
(2) A partner is discharged from any existing liability upon dissolution of the partnership by an agreement to that effect between himself, the partnership creditor and the person or partnership continuing the business; and **such agreement may be inferred** from the **course of dealing** between the creditor having knowledge of the dissolution and the person or partnership continuing the business. TEX. REV.CIV.STAT.ANN. art. 6132b § 36 (Vernon 1970) (emphasis added).

may be *inferred* from the *course of dealing* between the creditor having knowledge of the dissolution and the person continuing the partnership's business. *Id.*

The general rule that a retired partner remains liable for those partnership obligations that existed prior to dissolution of the partnership has been reaffirmed. Tex. Rev.Civ.Stat.Ann. art. 6132b § 36(1); *Thomas v. Price,* 718 F.Supp. 598, 609 (S.D.Tex.1989). However, section 36(2) has not been interpreted by Texas or federal courts. As a consequence, we have little guidance regarding what type of evidence of "course of dealing" would suffice to "infer" an agreement between the parties to discharge liability.

This Court finds some guidance from the Colorado court of appeals. The pertinent section of Colorado's partnership act is virtually identical to section 36(2). It provides that an agreement to discharge a retired partner from liability "may be *inferred from the course of dealing* between the creditor having knowledge of the dissolution and the person or partnership continuing the business." Colo.Rev.Stat. § 7–60–136(2) 1973 (emphasis added). In *Wester & Co. v. Nestle,* the Colorado court of appeals affirmed a trial court's finding of an inferred agreement based upon facts very similar to the case at hand. *Wester & Co. v. Nestle,* 669 P.2d 1046, 1048–49 (Colo. App.1983). In that case, a landlord sued a retired partner on a partnership lease that was in default. The retired partner had assigned his interest in the partnership to the partner continuing the lease. Payment was not in default until after dissolution of the partnership. A copy of the assignment was sent to the landlord, and the partner continuing the lease introduced his new partner to the landlord. *Id.* at 1047. The court noted that the landlord did not object to a change in parties or request that the retired partner remain liable. *Id.* At trial,

an affidavit of the landlord acknowledged that he knew the partner was retired, but he denied having knowledge of the dissolution until five months before the breach. The landlord also denied that he agreed to look to the remaining partners and the new partnership to satisfy its debts.

Applying § 7–60–136(2), the trial court concluded, from the landlord's knowledge of the situation and the parties' course of dealings, that the landlord had consented to the retired partner's discharge from liability. *Id.* at 1047–48. The Colorado court of appeals affirmed the judgment of the trial court based on the inferential language in § 7–60–136(2). *Id.* at 1048–49. The court stated that such factual findings, supported by evidence in the record, should not be disturbed on appeal.[3] *Id.* at 1049.

■ Turning to VAC's first point of error, we must determine whether the evidence is factually sufficient to support the jury's finding that there was an agreement between VAC, Jupe and Nabors to discharge Nabors from liability. The initial question is whether sufficient evidence exists for the jury to have found that VAC knew of the dissolution of the partnership. Unlike *Nestle,* Nabors did not send documents representing dissolution of the partnership to VAC. However, a conversation regarding Nabors' discontinuance with SWT did occur. Behrenfeld testified that as of February, 1989, he knew that Nabors was "no longer involved in the company." He acknowledged that he had no subsequent contacts with Nabors with regard to SWT. Furthermore, Nabors testified that he told Behrenfeld that he was interested in bidding on new jobs in his new capacity as Navco Insulation.

The letters and change orders support the contention that VAC was aware of SWT's change of address from Nabors' premises in Somerset to Highway 87 in San Antonio. Heilker testified that VAC of-

**3.** In *Colo–Tex Leasing, Inc. v. Neitzert,* the Colorado court of appeals held that no agreement to discharge a retired partner from liability existed. *Colo–Tex Leasing, Inc. v. Neitzert,* 746 P.2d 972, 974 (Colo.App.1987). In reversing the judgment, the court of appeals relied upon the retired partner's admission that he never notified

the lessor of his withdrawal from the partnership. *Id.* at 975. Even though the court cited to § 7–60–136(2), the court never discussed or even mentioned the inferential language or its applicability to the facts of the case. Accordingly, we find little guidance from *Neitzert.*

fered to warehouse the insulation equipment on its premises. One of Nabors' functions in the partnership had been to warehouse the insulation equipment. After Heilker drove to San Antonio to meet with Jupe, the salutation in the letters changed from "Gentlemen" to "Dear Charlie" or "Dear Mr. Jupe." And, finally, Jupe hand-wrote "Southwest Texas Mechanical Insulation *Corporation*" above his signature on the final two change orders even though the partnership's name had been "Southwest Texas Mechanical Insulation *Company*." Jupe had not hand-written anything above his signature on the change order made prior to dissolution of the partnership.

Even though VAC asserts that it did not necessarily know of the actual dissolution of the partnership, we find that sufficient evidence exists for the jury to have found that VAC knew of the dissolution of the partnership. It is the jury's province to judge the credibility of witnesses and the weight to be given their testimony. *Rivera*, 677 S.W.2d at 244.

■ We now address the primary issue of whether sufficient evidence exists for the jury to have inferred that an agreement existed between VAC, Jupe and Nabors to discharge Nabors from liability. Such evidence is found in the course of dealing between Jupe and VAC. TEX.REV. CIV.STAT.ANN. art. 6132b § 36(2). As in *Nestle*, VAC never objected to Nabors' absence from the project and it never requested that Nabors remain liable. This is true even though VAC and Jupe engaged in considerable negotiations from the time of dissolution until breach of the contract. Also, the record reflects that VAC not only continued to deal with Jupe, but also elected not to contact Nabors regarding default until suit was filed in this matter, even though Nabors was available at all times and his whereabouts were known and he had in fact communicated his wish to bid on new insulation jobs to Behrenfeld. After the breach, all demands were addressed to Jupe. The letters suggest that Jupe personally had "gone into hiding" to escape his responsibilities.

We hold that sufficient evidence of a course of dealing between VAC and Jupe exists in the record from which the jury could have inferred that an agreement existed between VAC, Jupe and Nabors to discharge Nabors from liability on the insulation contract. The evidence is conflicting, but it is within the jury's province to judge the credibility of the witnesses and the weight to be given their testimony. *Rivera*, 677 S.W.2d at 244. This Court may not interfere with the jury's resolution of conflicts in the evidence. *Id.* After considering all of the evidence, we do not find that the evidence supporting the jury verdict is so weak or that the finding is so against the great weight and preponderance of the evidence that the result is clearly wrong and unjust. *Cain*, 709 S.W.2d at 179. Our holding on appellant's sufficiency of the evidence point of error necessarily means that some evidence existed to support the jury's finding. Appellant's first and second points of error are overruled.

■ Appellant's third and fourth points of error are that VAC established, as a matter of law, that its attorneys' fees were not zero, and that the jury's finding that the attorneys' fees were zero was against the great weight and preponderance of the evidence.

■ A person may recover reasonable attorneys' fees if the claim is for a contract. TEX.CIV.PRAC. & REM.CODE § 38.-001(8) (Vernon 1986). However, recovery of attorneys' fees under the statute requires: 1) recovery of a valid claim in a suit on an oral or written contract; 2) representation by an attorney; 3) presentment of the claim to the opposing party or a representative of the opposing party; and 4) failure of the opposing party to tender payment of the just amount owed before the expiration of thirty days from the day of presentment. *Id.* §§ 38.001–.002; *New Amsterdam Casualty Co. v. Texas Indus. Inc.*, 414 S.W.2d 914 (Tex.1967); *Sikes v. Zuloaga*, 830 S.W.2d 752, 753 (Tex.App.—Austin 1992, no writ). Thus, to recover attorneys' fees a party generally must obtain a judgment. *LaFreniere v. Fitzgerald*, 669 S.W.2d 117, 119 (Tex.1984); *Jay–*

*Lor Textiles, Inc. v. Pacific Compress Warehouse Co.,* 547 S.W.2d 738, 743 (Tex. Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). Because VAC did not prevail at the trial court or on appeal, we hold that VAC is not entitled to attorneys' fees as a matter of law. Appellants' third and fourth points of error are overruled.

 Appellee cross appeals by four cross-points of error, none of which modify our holding. By its first cross-point, appellee argues that the trial court erred in overruling its objection to appellant's question pertaining to attorneys' fees. TEX. R.APP.PROC. 81(b)(1) provides in part that a judgment shall not be reversed on appeal unless the appellate court is of the opinion that the error complained of amounted "to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court...." Because we have held that VAC is not entitled to attorneys' fees as a matter of law, any error in the submission of the question complained of would be harmless error in that it did not cause the rendition of an improper judgment. TEX.R.APP.P. 81(b)(1). Appellee's first cross-point of error is overruled.

 By its second and third cross-points, appellee argues that the trial court erred in its submission of the charge to the jury. Because we have affirmed the jury's finding that an agreement existed between Jupe, Nabors and VAC to discharge Nabors from liability, any error in the charge would be harmless error in that it did not cause the rendition of an improper judgment. TEX.R.APP.P. 81(b)(1). Appellee's second and third cross-points are overruled.

 By its fourth cross-point, appellee prays for damages from this Court on the grounds that appellant's appeal is frivolous and without merit. TEX.R.APP.P. 84 permits a court of appeals to award damages at its discretion when an appellant has "taken an appeal for delay and without sufficient cause." However, the record must clearly show that appellant had no reasonable expectation that the appellate court would reverse the judgment, and that appellant did not pursue the appeal in good faith. *McGuire v. Post Oak Lane Townhome Owners,* 794 S.W.2d 66, 68 (Tex. App.—Houston [1st Dist.] 1990, writ denied), *Beago v. Ceres,* 619 S.W.2d 293, 295 (Tex.App.—Houston [1st Dist.] 1981, no writ). After reviewing the record, we do not find that appellant took appeal for delay, with no reasonable expectation that this Court would reverse the judgment. *Id.* Accordingly, we hold that sufficient cause existed to warrant appeal. Appellee's fourth cross-point is overruled.

The trial court's judgment is AFFIRMED.