JAMES L. KRASNE & another,[1] trustees,[2] *vs.* TEDESCHI & GRASSO & others[3]; DAVID S. MORTENSEN, plaintiff in cross claim.

Suffolk. November 5, 2001. - February 19, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Partnership,* Attorneys, Agreement, Withdrawal of partner. *Contract,* Lease of real estate. *Landlord and Tenant,* Termination of lease. *Indemnity.*

A former partner in a law firm was not discharged from debts incurred by the partnership arising from a lease agreement, where, under G. L. c. 108A, § 36 (2), the conduct of the parties did not imply an agreement to discharge the former law partner from liability. [105-107]

A former partner in a law firm failed for lack of adequate appellate argument to carry his burden on appeal, Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975), with respect to his claim for indemnification by his former firm. [107-108]

A judge erred in awarding damages to a landlord that included rent for the months after the landlord had sold the leased property, through the end of the lease term, with no mitigation for the sale of the property. [108-110]

CIVIL ACTION commenced in the Superior Court Department on October 16, 1996.

The case was heard by *Barbara J. Rouse*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Michael C. Gilleran* for David S. Mortensen.

*Gordon P. Katz* for the plaintiffs.

IRELAND, J. In this case, we consider whether a former partner is discharged from debts incurred by the partnership. Because we agree with the trial judge's determination that, under G. L. c. 108A, § 36 (2), the conduct of the parties did not imply an

[1]James A. Jones.

[2]Of Associates Summer Street Trust.

[3]Its present and former partners Theodore Tedeschi, Linda Grasso, and David S. Mortensen.

agreement to discharge the former partner from liability, we affirm the judgment entered in the Superior Court for the plaintiffs. We remand the case, however, for recalculation of damages.

*Facts.* We take the facts from the judge's findings, which are undisputed. The defendants, Theodore Tedeschi and Linda Grasso, under the firm name Tedeschi and Grasso, entered into a lease agreement with Franklin King, Jr., and Robert B. Swett, Jr., trustees of Associates Summer Street Trust (landlord), beginning on February 16, 1991. David S. Mortensen became a general partner in the law firm of Tedeschi and Grasso on January 1, 1992, and as a result, the name of the firm was changed to Tedeschi, Grasso and Mortensen. On or about September 29, 1993, the landlord and the law firm of Tedeschi, Grasso and Mortensen extended the lease through February, 1999. In 1995, the law firm began to fall behind on its rent payments, and in July, the landlord and the law firm agreed to roll the outstanding rent into a promissory note to be paid over time. The first payment of this note was made on or about September 7, 1995.

Dissatisfied with his position at the law firm, Mortensen sent a letter on September 11, 1995, to Tedeschi and Grasso. announcing his withdrawal from the partnership. He did not send a copy of this letter to the landlord, but he, or someone on his behalf, did speak with employees of the landlord regarding the logistics of moving his belongings' out of the building. On September 21, the law firm removed Mortensen's name from its letterhead and signage.

After Mortensen's departure, the law firm continued to have problems paying the rent. From January through June of 1996, the landlord sent four notices that the law firm was in default with increasing threats of legal action, but these notices were not communicated to Mortensen. On September 6, 1996, the landlord sent a fifth notice, which Tedeschi forwarded to Mortensen. Having received no response, the landlord sent a letter dated September 20, 1996, to the law firm, as well as to Mortensen, informing them that the lease would terminate in ten days from receipt of the notice, in accordance with the lease terms governing default. At the end of September, Tedeschi and Grasso vacated the premises.

On September 30, 1996, the landlord advised the law firm

and Mortensen that it would file a lawsuit unless a settlement could be reached. In a letter sent to the landlord dated October 1, Tedeschi acknowledged receipt of the letter and stated that he would need to "coordinate" with Mortensen. On October 3, Tedeschi forwarded to Mortensen correspondence from the landlord regarding monies owed under the lease, and instructed him to participate in any settlement discussions, since he was "directly obligated on the lease." No settlement was reached.

Immediately after the defendants vacated, the landlord began preparing the space to show to brokers and prospective tenants. Some of the space was relet for a few months, then more space for a five-year term, and by May, 1997, the landlord had seven-year leases on the remainder. On March 18, 1998, the landlord sold the building. This litigation proceeded to a bench trial in March, 1999, and judgment entered for the landlord. Mortensen, having cross-claimed against Tedeschi and Grasso for 100% or in the alternative, 95% indemnification from them, received 95% indemnification. The defendants all appealed. We granted Mortensen's application for direct appellate review.

1. *G. L. c. 108A, § 36 (2) and (3).* Under § 36 (2) of G. L. c. 108A:

> "A partner is discharged from any existing liability upon dissolution of the partnership by an agreement to that effect between himself, the partnership creditor and the person or partnership continuing the business; and such agreement may be inferred from the course of dealing between the creditor having knowledge of the dissolution and the person or partnership continuing the business."

Mortensen claims that the conduct of Tedeschi and Grasso and the landlord implies an agreement to discharge Mortensen from liability under the lease, meeting the standard set forth above. He argues that the judge failed to apply the statutory requirements correctly and erred in relying on *Marr* v. *Doran*, 307 Mass. 184, 185 (1940) (in absence of "agreement by the landlord to look to the remaining partner for the rent," defendant remained liable under the lease). While we will not set aside the trial judge's findings of fact unless they are clearly erroneous, we "scrutinize without deference the legal standard which the judge applied to the facts." *Kendall* v. *Selvaggio*, 413 Mass.

619, 621 (1992). See Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974).

Mortensen attempts to distinguish *Marr* v. *Doran, supra,* because in that case the landlord expressly stated, apparently fairly promptly, that he would not release the departing partner. See *id.* at 184. Therefore, Mortensen claims, *Marr* "does not address the situation where, as here, the creditor takes *no action* in connection with a partner's departure for nearly a year thereafter" (emphasis in original). This claim mistakes the status quo. A departed partner remains liable for the debts of the partnership unless all parties have agreed to a discharge. See G. L. c. 108A, § 36 (2). In other words, the law presumes a continuing obligation. No affirmative steps must be taken to hold the departed partner liable; rather, affirmative steps are required to release him.[4]

Mortensen also argues that the judge erred by looking for evidence of subjective, rather than objective, agreement to release Mortensen from liability. We disagree. The judge's findings of fact thoroughly catalogue the objective course of dealing between the landlord and Tedeschi and Grasso, and Mortensen does not dispute those factual findings. Even assuming the landlord had knowledge of the partnership's dissolution, the judge ruled, the landlord's continued billing to and collection from Tedeschi and Grasso is insufficient to establish an agreement to release Mortensen from liability. The remaining evidence, including Tedeschi's forwarding of the September 6, 1996, demand letter from the landlord to Mortensen and telling the landlord on October 1 that the firm needed to coordinate with Mortensen, and the landlord's sending of demand letters to Mortensen on September 20 and 30, supports the judge's factual finding that there was no agreement between the partnership creditor (landlord) and the partnership continuing the business (Tedeschi and Grasso) to release Mortensen from liability. This finding is not clearly erroneous, and we will not set it aside on

---

[4]For the same reason, we reject Mortensen's argument that the landlord is estopped from holding him liable because of its failure promptly to say it would. In addition, there is no evidence that Mortensen was induced by some representation or conduct of the landlord into an act or omission to his detriment. See *Turnpike Motors, Inc.* v. *Newbury Group, Inc.,* 413 Mass. 119, 123-126 (1992).

appeal.[5] In light of the lack of an agreement to release him, the judge correctly ruled that Mortensen remains liable under the lease.

Mortensen next argues that on dissolution, he became a surety for the partnership, and was discharged when the landlord accepted late payment from Tedeschi and Grasso. Discharge of a surety is governed by G. L. c. 108A, § 36 (3).[6] See *Bradford* v. *First Nat'l Bank*, 932 P.2d 256, 262 (Alaska 1997) (referring to Alaska Stat. § 32.05.310 [c] [2000], Alaska's cognate statute). As that court explained, accepting this argument would require the conclusion that the same course of dealing that specifically does not discharge former partners under subsection (2) does discharge them under subsection (3). See *id.* Such an interpretation would violate our general rule that "a statute should be read as a whole to produce an internal consistency," *Turner* v. *Lewis*, 434 Mass. 331, 333 (2001), quoting *Telesetsky* v. *Wight*, 395 Mass. 868, 873 (1985), and we decline to adopt it.

2. *Indemnification.* Mortensen argued in the Superior Court that he was entitled to 100%, or in the alternative, 95% indemnification from Tedeschi and Grasso. He based his claim for 100% indemnification on the assertion that when he left, the partnership had sufficient assets to pay its debt to the landlord, and that under G. L. c. 108A, § 40, it was obligated to do so, thereby freeing him completely from responsibility for the debt.[7] In the alternative, Mortensen argued that under their "Amend-

---

[5]Mortensen bases his argument that the judge erred in finding that no agreement could be inferred from the course of dealing on *Wester & Co.* v. *Nestle*, 669 P.2d 1046 (Colo. Ct. App. 1983), and *Victoria Air Conditioning, Inc.* v. *Southwest Tex. Mechanical Insulation Co.*, 850 S.W.2d 720 (Tex. Ct. App. 1993), at his peril. In those cases, as in this one, the appellate courts defer to the fact finder. See *Wester & Co.* v. *Nestle, supra* at 1049; *Victoria Air Conditioning, Inc.* v. *Southwest Tex. Mechanical Insulation Co., supra* at 725.

[6]"Where a person agrees to assume the existing obligations of a dissolved partnership, the partners whose obligations have been assumed shall be discharged from any liability to any creditor of the partnership who, knowing of the agreement, consents to a material alteration in the nature or time of payment of such obligations." G. L. c. 108A, § 36 (3).

[7]He also presented the Superior Court judge with a claim of res judicata based on the final judgment entered in Mortensen *vs.* Grasso and Tedeschi, Suffolk Superior Court No. 95-5935-C (Jan. 4, 2000), in which the judge found that Mortensen's liability was not triggered until the partnership assets had been applied to its debts, and that because the partnership assets exceeded

ment to Articles of Partnership," he "shall be, and he agrees to be, liable for .five percent (5%) of the past and future liabilities of the partnership," and that he therefore should be indemnified 95%. The judge ordered that Tedeschi and Grasso indemnify Mortensen for 95% of the amount due and owing the landlord.

Mortensen claims on appeal that the judge erred in failing to award him 100% indemnification because the partnership violated its G. L. c. 108A obligation to pay the landlord from the partnership funds available at the time of the dissolution.[8] He provides us with several citations to the record, which reveal only support for the claim that the partnership was behind on its rent (a fact found by the judge, and agreed to by all of the parties), and a single balance sheet, purporting to show that firm assets exceeded liabilities in September, 1995. Without further development of the record to verify the accuracy of the balance sheet and provide it with any necessary context, we cannot say whether the judge erred in rejecting this argument. We conclude that Mortensen has failed to carry his burden on appeal, see Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975), and reject this claim, as well.

3. *Damages.* The judge calculated the amount of unpaid rent that the defendants owed the landlord as of the date of termination, added the amount remaining on the lease (for the period from October 1, 1996, through the lease's expiration date on February 15, 1999), and subtracted the net amount the landlord recovered from reletting through March 18, 1998, the date the landlord sold the building. Mortensen argues that the judge erred in awarding damages that include rent for the months after the landlord had sold the building in March, 1998, through the end of the lease term in 1999, with no mitigation for the sale. We agree.

liabilities at the time of the dissolution, "Mortensen was not responsible to pay the firm for outstanding liabilities." Mortensen does not pursue any claim of res judicata on appeal; therefore, we do not address it. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

[8]Mortensen also argues that he is entitled to 100% indemnity because Tedeschi and Grasso assumed all of the former firm's debts, thereby releasing him from liability, and because fairness and equity demand it. The first fails for lack of an agreement to release Mortensen from his liability under the lease, see discussion, Part 1, *supra,* and the second for lack of adequate appellate argument. See Mass. R. A. P. 16 (a) (4).

Termination of a lease ends a tenant's obligation to pay rent in the absence of any provision otherwise. See Restatement (Second) of Property, Landlord and Tenant § 12.1 comment g (1977). "If there is such a provision, the landlord is required to take reasonable steps to obtain a new tenant on terms that will mitigate the original tenant's liability as much as is feasible under the circumstances. The cost to the landlord of mitigation is chargeable to the original tenant." *Id.* at § 12.1 comment i. The landlord and defendants here had just such an agreement in their lease. No provision is made for any form of mitigation beyond reletting the premises to a new tenant; however, it is clear that the purpose of the common-law rule and the lease provision is that the renter's liability be mitigated as much as is feasible, or, in the language of the lease, "commercially reasonable." A landlord can mitigate damages in other ways, and selling the property is one such way. See *Sun Cal, Inc.* v. *United States*, 25 Cl. Ct. 426, 433 (1992). "[T]he sale price of commercial real estate can be correlated to the present value of the property's future stream of rental income." *McGuire* v. *Jersey City*, 125 N.J. 310, 322 (1991). In other words, "the lessor's sale of the property recompenses him or her for that expected future income from rentals." *Id.* When the landlord sold the property, it was compensated for the rental value of the property through the end of the defendants' lease term and beyond.[9] Therefore, the judge erred by including the post-sale rental amount in calculating the defendants' liability. See *Tritsch* v. *Boston Edison Co.*, 363 Mass. 179, 182 (1973) ("plaintiff cannot properly receive remuneration in excess of his actual damages").

Tedeschi and Grasso claim that the judge erred in ruling that the landlord promptly took commercially reasonable steps to mitigate damages on the breach of the lease because the landlord waited one year from the time it first learned of the difficulty the law firm was having in paying its rent. However, we do not require preemptive efforts to mitigate. See *Cantor* v. *Van Noorden Co.*, 4 Mass. App. Ct. 819, 819 (1976) (no obligation

---

[9]There was no evidence that the sale price was affected by any differences between the terms of the law firm's lease and the terms of the leases to the subsequent tenants.

to seek new tenants to mitigate when lease not terminated), citing *Fifty Assocs.* v. *Berger Dry Goods Co.*, 275 Mass. 509, 514 (1931). The law firm had agreed with the landlord in July, 1995, to roll the overdue rent into a promissory note on which it began making at least partial payments, and repeatedly assured the landlord that it would make good its debt. When the landlord grew tired of waiting for payment to materialize and terminated the lease, it began attempts to relet the premises "[i]mmediately." There was no error.

In closing, we note that Tedeschi and Grasso also argue that the judge should not have made findings of fact concerning Mortensen's compensation and access to partnership books and that they may be prejudiced by those findings in a related case. Because Tedeschi and Grasso have failed to provide any legal support for this argument, we decline to address it. See Mass. R. A. P. 16 (a) (4).

We affirm the judgment for the plaintiffs, vacate the award of damages, and remand the case to the Superior Court for a recalculation of damages consistent with this opinion.

*So ordered.*