Billings, Thomas P., J.
For the reasons that follow, Defendant’s Motion to Dismiss is DENIED.
BACKGROUND
The Complaint alleges the following facts, here taken as true. The plaintiff was a tenant in a Boston studio apartment in a building belonging to the defendant. She signed a one-year lease (September 1, 2013 to August 31, 2014) in which she agreed to pay rent of $16,800, in monthly installments of $1,400 each.
When her upstairs neighbor “increasingly made loud and disruptive noises as all hours of the night,” the plaintiff decided to move out. An addendum to the lease provided, at paragraph 10, a “buy-out” option for a tenant who wished to terminate the lease short of its term. This would require three months’ notice, plus a *392 payment of the greater of $1,250 or one and one-half months’ rent, which the lease addendum characterized as “not a penalty” but as “liquidated damages.” The payment would be due whether or not, and regardless of how soon, the defendant re-let the unit.
When it learned of the plaintiffs desire to leave, however, the defendant gave her an “Early Lease Termination Form,” which gave her a choice among three alternatives. There was (1) “Buy out” on the same economic terms as in the lease addendum; (2) “Replacement,” by which, upon the her presentation to the landlord of a qualified replacement tenant ready to sign a new lease plus a $650 Replacement fee, the tenant’s obligations would be discharged; and (3) “Replacement with Broker Assistance,” by which the tenant pays the $650 Replacement fee plus a $600 broker’s fee, and is discharged if and when the broker “finds a successful candidate.”
The plaintiff selected option 2, “Replacement.” She found a replacement tenant; the defendant accepted the replacement; the replacement signed a new one-year lease commencing January 1, 2014; and the plaintiff paid the rent through December 31, 2013 plus the $650 Replacement fee. The Complaint, labeling the $650 fee as a “windfall” to the landlord, asserts that the defendant violated Chapter 93A in charging it.
DISCUSSION
The plaintiff, in her opposition to the Motion to Dismiss, characterizes the $650 fee as excessive liquidated damages — that is, a charge in excess of any reasonable prospective estimate of likely damages— and therefore an unlawful penalty. The defendant, while asserting in passing that it in fact incurs administrative and other costs, even when Tenant A moves out one day and Tenant B moves in the next,[1] says that the $650 should be viewed not as liquidated damages, but as agreed consideration for a novation; the substitution of a new contract for the old. There was, it adds, nothing unfair or deceptive about it.
The defendant’s argument is largely premised on its assertion that if the landlord does not accept the surrender of a lease, it is under no obligation to mitigate its damages. It therefore could have refused the tenant’s surrender, allowed the apartment to remain empty with no effort to re-let it, and claimed the full unpaid rent as damages. When it offered the plaintiff the opportunity, at a cost of $650, to provide a replacement tenant and terminate further liability to the landlord, and the plaintiff accepted, the parties had simply agreed to a new contractual relationship, to which neither was obligated to assent and which conferred an obvious benefit on the plaintiff.
The defendant is correct that under traditional principles of property law, a landlord had no obligation to accept a surrender and, if it did not, was under no obligation to seek a replacement tenant or otherwise to mitigate its damages. See Saunders Real Estate Corp. v. Martino, 49 Mass.App.Ct. 1119 (2000) (Rule 1:28 decision), citing Atkinson v. Rosenthal 33 Mass.App.Ct. 219, 222 (1992), and Cantor v. Van Noorden Co., 4 Mass.App.Ct. 819 (1976); Restatement (Second) of Properly, Landlord and Tenant §12.1 comment i (1977). Where a landlord terminates a lease or accepts a surrender, by contrast, it may not sit idly back and watch the tenant’s debt pile up; rather,
the landlord is required to take reasonable steps to obtain a new tenant on terms that will mitigate the original tenant’s liability as much as is feasible under the circumstances. The cost to the landlord of mitigation is chargeable to the original tenant.
Krasne v. Tedeschi and Grasso, 436 Mass. 103, 109 (2002), quoting Restatement (Second) of Property, Landlord and Tenant §12.1 comment i (1977).
All four of the just-cited cases, however, involved commercial leases. Surprisingly, there does not appear to be any reported Massachusetts case addressing the issue with respect to a residential lease. The plaintiff has cited to decisions from two divisions of the Housing Court, holding that a residential landlord has an obligation to mitigate. Gagne v. Kreinest, Hampden Housing Court, 91SC1569 (December 6, 1991); Bridges v. Palmer, Boston Housing Court, 07326 (May 24, 1979); Grumman v. Barres, Boston Housing Court, 06334 (March 1, 1979). These cases are frequently cited in secondary sources for this same proposition. I have been unable, however, to locate copies of these decisions, or to determine whether or not the landlords in those cases had accepted a surrender of the leased property.
As a general proposition, however, “there are significant differences between commercial and residential tenancies and the policy considerations appropriate to each.” Wesson v. Leone Enters., Inc., 437 Mass. 708, 719 (2002). Consumer protection concerns loom large in the Massachusetts law of residential leases. See, e.g., Boston Hous. Auth. v. Hemingway, 363 Mass. 184, 198 (1973), in which the SJC, albeitin a different context (the warranty of habitability), “reject(ed) the old common law’s conception of the lease as a properly transaction,” noting that “(t]he modern view favors a new approach which recognizes that a lease is essentially a contract between the landlord and the tenant
It seems a small next step to suppose that, when the appellate courts finally confront the issue, residential leases will be held subject to the basic rule of the common law that “(w]here a party is entitled to the benefit of a contract, and can save himself from a loss arising from a breach of it at a trifling expense or with reasonable exertions, it is his duty to do it.” Burnham v. Mark IV Homes, Inc., 387 Mass. 575, 586-87 (1982). I therefore assume, for present purposes, that the parties’ lease is to be treated as a contract rather than a conveyance (see Hemingway at 188-89), and that the *393 landlord is under a general duty to mitigate damages resulting from the tenant’s breach.
With this assumption, it is not self-evident that the landlord in this case had the right to exact a $650 fee from the plaintiff when she presented it with a qualified and creditworthy tenant who was ready, willing and able to move in and pay the same rent, starting the day after the original tenant left — -i.e., to mitigate the landlord’s damages from the plaintiffs early departure. For a commercial actor to charge a consumer a fee for the right to fulfill the commercial actor’s own obligation fits well enough into the accepted definition of unfair conduct[2] to survive a motion to dismiss.
It may be, then, that the defendant’s duty to mitigate required it simply to accept the qualified replacement tenant, without a monetary charge to the departing tenant. Or, it may be that the defendant incurred at least $650 in costs in qualifying the new tenant and readying the apartment for him or her (see footnote 1, supra), and so was entitled to charge this amount as the cost of mitigation; or it may be that $650 was a reasonable enough estimate of such costs that it constituted permissible liquidated damages. The allegations of the Complaint do not settle the question, however, meaning that the defendant’s Rule 12(b)(6) motion must be denied.
ORDER
For the foregoing reasons, Defendant’s Motion to Dismiss is DENIED.

 The brief mentions cleaning, painting, replacement of toilet seat and shower curtain, re-keying apartment door and mailbox, and replacement of damaged blinds. At oral argument, counsel added that the plaintiffs lease was for the usual September-through-August season, while the new lease is for the calendar year, making it more difficult to let the apartment when the new lease is up. All of this, however, is outside the four corners of the complaint, its attached exhibits, and the documents to which it refers, and so is off limits on a Rule 12(b)(6) motion. See Harhen v. Brown, 431 Mass. 838, 840 (2000), and cases cited.

‘The standard of c. 93A unfairness calls for an assessment, in the total circumstances, (1) whether the challenged conduct falls within ‘the penumbra of. . . common-law, statutory, or other established concepts] of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers [,]... competitors!,] or other business[es].’ Statutory unfairness may materialize in the absence, and therefore independently, of common-law wrongdoing, inequitable conduct, or other statutory violation.” Welch v. Barach, 84 Mass.App.Ct. 113, 122 (2013), quotingfrom PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975).