**Mildred HOOVER, Plaintiff,**

v.

**THE COCA–COLA COMPANY, Defendant.**

No. 3:001–1298.

United States District Court, M.D. Tennessee, Nashville Division.

Feb. 28, 2003.

Steve R. Roller, McMinnville, TN, for Mildred Hoover.

T. Harold Pinkley, Eric Todd Presnell, Miller & Martin, LLP, Nashville, TN, for Coca–Cola Company.

## MEMORANDUM

TRAUGER, District Judge.

Pending before the court is defendant's Motion for Summary Judgment (Docket No. 18), to which plaintiff has responded (Docket No. 26), and defendant has replied (Docket No. 38). For the reasons discussed herein, defendant's Motion for Summary Judgment will be granted.

### I. STATEMENT OF FACTS

From May through October 2000, the Coca–Cola Company sponsored a promotional contest known as the "Coca–Cola Classic Summer 2000 Game" ("Game").[1] In this contest, entrants could win one of four prizes by obtaining a winning game piece. Game pieces could be found inside specially marked bottle labels of Coca–Cola and on Game Discs inside specially marked cans of Coca–Cola or could be obtained by mailing in a request for a free game piece. The Coca–Cola Company retained the services of D.L. Blair, Inc., an independent, third-party company, to develop and execute the Game. In addition to setting up the Game and developing the Official Rules, D.L. Blair's role included judging the contest and determining whether entrants were entitled to any prize.

The Game included a number of prizes, but most notably it offered the potential for winning $1 million. D.L. Blair printed a unique, ten-digit code, a unique design, and a unique lettering format on each winning game piece. None of these appeared on the face of any other game piece. The Official Rules provided that all allegedly winning game pieces were subject to verification and approval by D.L. Blair. The Official Rules further provided that, by participating in the Game, the contestants agreed to be bound by the Official Rules and the decisions of D.L. Blair with respect to judging whether a submission was, in fact, a winning game piece.

Each game piece included a four-character series indicating whether a prize had been won and, if so, which prize. There were five different character-series: "MILL" indicated that the recipient was entitled to $1 million; "UNIV" indicated that the recipient was entitled to a Universal Studios Prize; "$10K" indicated that the recipient was entitled to $10,000; "$100" indicated that the recipient was entitled to $100; and "XXXX" indicated that the recipient had not won anything at all.

On July 26, 2000, plaintiff Mildred Hoover purchased a specially marked 3–liter bottle of Coca–Cola at the Piggly Wiggly store on Manchester Highway in Woodbury, Tennessee. A few days later, Ms. Hoover removed the label from the bottle and examined it. Her game piece differed from most in that the character-series on her game piece was essentially just a pat-

---

1. Unless otherwise noted, all facts are drawn from defendant's Statement of Undisputed Facts (Docket No. 21). Plaintiff did not file a response to this Statement when she filed her Response to defendant's Motion on October 15, 2002 and has not filed one since then. Under the Local Rules, plaintiff's failure to respond operates as an indication that plaintiff does not dispute them for purposes of summary judgment. Local Rule 8(7)(g); *Grimes v. Superior Home Health Care of Middle Tenn.*, 929 F.Supp. 1088, 1096 (M.D.Tenn. 1996).

tern of dots and gaps rather than a string of actual characters. However, Ms. Hoover managed to make out what appeared to be an "M" as the first character of the series. (Docket No. 22, Attach., Ex. 15, Ms. Hoover's Game Piece). Reasoning that the character-series on each label had to be one of the five prescribed by the Official Rules, and reasoning further that the only character-series that began with, or even included, an "M" was "MILL," Ms. Hoover concluded that her game piece entitled her to $1 million.

Ms. Hoover's game piece did not contain the ten-digit verification code, unique design, or unique lettering format placed on the winning labels by D.L. Blair.

Ms. Hoover contacted the Coca–Cola Company. Representatives instructed her to send her game label to D.L. Blair for verification, which she proceeded to do by certified mail. Shortly thereafter, a representative of the Coca–Cola Company telephoned her to inform her that her piece was illegible and did not entitle her to any prize. Coca–Cola did, however, send her a T-shirt and some coupons as a gift. Ms. Hoover persisted in her belief that she had won $1 million and contacted local media to publicize her claim. (Docket No. 22, Attach., Ex. 9, Newspaper Article). She then filed a Complaint in Cannon County Circuit Court on July 24, 2001, alleging a breach of contract on the part of Coca–Cola because of its refusal to award her the $1 million that she believes she is entitled to. The suit was later removed to this court on diversity grounds.

## II. ANALYSIS

### A. Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

To prevail, the moving party must prove the absence of any genuine issue of material fact as to the essential elements of the opposing party's claim. *See Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989). To resolve the motion, the court must view the factual evidence in the light most favorable to the nonmoving party. Its evidence is to be believed and all reasonable inferences are to be drawn in its favor. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *McLean v. 988011 Ontario, Ltd.,* 224 F.3d 797, 800 (6th Cir.2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.' " *Little Caesar Enters., Inc. v. OPPCO,* 219 F.3d 547, 551 (6th Cir.2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). If the nonmoving party, however, fails to demonstrate a genuine factual dispute on any essential element of the claim, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.,* 187 F.3d 533, 537–38 (6th Cir.1999).

To preclude summary judgment, the nonmoving party "is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *Gaines v. Runyon,* 107 F.3d 1171, 1174–75 (6th Cir.1997). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."

*Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. If the evidence offered by the non-moving party is "merely colorable," or "is not significantly probative," or enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson,* 477 U.S. at 249–252, 106 S.Ct. at 2510–12. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White,* 190 F.3d 427, 430 (6th Cir. 1999) (citations omitted).

### B. Law Governing the Contest

■ The parties agree that this diversity action is governed by the substantive law of Tennessee. (Docket No. 20, Defendant's Memorandum in Support of Motion for Summary Judgment, P. 9 fn. 1); *see* (Docket No. 26, Plaintiff's Response to Defendant's Motion for Summary Judgment, P. 2)(citing a Tennessee Supreme Court case as providing the governing law). However, the Tennessee courts have not addressed the legal issue of what law governs promotional contests. Because of this, this court must attempt to predict what law the Tennessee Supreme Court would apply to promotional contests. "When presented with a novel issue of law and applicable state precedent is absent, this Court must predict how the highest court of the state would resolve the issue." *MacDonald v. General Motors Corp.,* 784 F.Supp. 486, 495–496 (M.D.Tenn.1992).

The parties agree that the majority rule in other jurisdictions, and the one that the Tennessee Supreme Court would apply if the issue were before it, is that " '[t]he law of contracts governs the relationship between the sponsor of a prize contest and an entrant in the contest.' " (Docket No. 20, Defendant's Memo in Support of Motion for Summary Judgment, P. 9)(quoting *Harlem–Irving Realty, Inc. v. Alesi,* 99 Ill.App.3d 932, 55 Ill.Dec. 181, 425 N.E.2d 1354, 1357 (1981)); (Docket No. 26, Plaintiff's Response to Motion for Summary Judgment, P. 2). The parties further agree that a promotional contest is essentially a unilateral contract in which the entrant must fully perform in accord with the terms of the offer, i.e. by producing a game piece that merits the award of a prize under the official rules of the game, before the offeror is bound to award a prize. *Ray v. Thomas,* 191 Tenn. 195, 232 S.W.2d 32, 35 (1950).

In this Game, the Official Rules were available to the public, appearing inside specially marked can packs and on display at retail stores. (Docket No. 19, Ex. 1, Reichard Affidavit, ¶ 5). The Official Rules could also be obtained by contacting either a toll-free number or an address that were both printed on can packs, bottles, and promotional materials. The Official Rules provided, "All claims subject to verification.... Any Official Game Piece/Game Disc/ Official Coupon Message/can that is illegible, mutilated, altered, duplicated, tampered with, forged, cut, torn ... will be null and void." (Docket No. 22, Attach., Ex. 2, Official Rules, ¶ 6). The Official Rules also provided, "By participating in this promotion, entrants agree to be bound by the Official Rules and the decisions of the judges whose decisions are final. Sponsors not responsible for any typographical or other error in the printing, the offering or in the announcement of prizes." (Docket No. 19, Ex. 1, Official Rules, ¶ 7).

### C. Ms. Hoover's Game Piece

■ Ms. Hoover's game piece fulfills none of the requirements of a winning game piece under the Official Rules. D.L. Blair, the official judge, has adjudged the chaotic series of dots and gaps found on Ms. Hoover's game piece to be illegible. Based on this judgment, D.L. Blair concluded that Ms. Hoover did not win $1

million. D.L. Blair buttressed this conclusion by noting that Ms. Hoover's game piece does not include the ten-digit verification code, unique design, or unique lettering that were printed on all winning game pieces. The terms of the contract provide that an illegible game piece is void and that Coca–Cola is not responsible for errors in the printing of game pieces. The terms further provide that entrants are bound by the verification decisions of D.L. Blair. Ms. Hoover has presented no evidence showing that her piece was a winner other than her own affidavit and the affidavit of Arna Smithson, owner of the Piggly Wiggly store that sold Ms. Hoover the Coca–Cola. Hoover and Smithson both believe that Ms. Hoover's piece entitles her to $1 million. Their opinions, without more, are insufficient to raise a genuine issue of fact as to whether the game piece was a winner. Thus, as a matter of law, Ms. Hoover's game piece was not a winner and she is not entitled to $1 million from Coca–Cola.

### III. CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment will be granted. An appropriate order will enter.

### ORDER

For the reasons discussed in the accompanying Memorandum, Defendant Coca–Cola's Motion for Summary Judgment is **GRANTED**. This case is **DISMISSED**.