**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0919n.06
Filed: December 20, 2006

No. 05-6051

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JUNE BAUGHAM, SARAH, DERRICK, RITA YOUNG, PHYLLIS LEE, | ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) ) | COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| BATTERED WOMEN, INC; BATTERED WOMEN, INC., d/b/a AVALON CENTER, INC., SHARON MOORE, and PATTY BOARDWINE, | ) ) ) ) ) ) | OPINION |
| | ) | |
| Defendants-Appellees. | ) | |
| _____ | ) | |

**BEFORE:  CLAY, SILER, and BALDOCK,[*] Circuit Judges.**

**BALDOCK, Circuit Judge.** Plaintiffs June Baugham, Sarah Derrick, Rita Young, and Phyllis Lee (collectively "Plaintiffs") are former and present employees of Defendant Battered Women, Inc., d/b/a/ Avalon Center, Inc. (hereinafter "Avalon").  They appeal the district court's entry of summary judgment in favor of Avalon on their claims for hostile work environment same-sex harassment,

_____

[*] The Honorable Bobby R. Baldock, United States Court of Appeals for the Tenth Circuit, sitting by designation.

constructive discharge, and retaliation brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm in part, vacate in part, and remand in part for further consideration.

## I.

In the summary judgment context, we ordinarily state the facts of the case in the light most favorable to the non-moving party. *See Tysinger v. Police Dept. of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006). In this case, however, the district court accepted as true Avalon's statement of undisputed material facts after the Plaintiffs failed to properly oppose those facts. *See* Middle District of Tennessee Local Rule 56.01.[1] Plaintiffs' failure to comply with the district court's local rule resulted in a more defendant-friendly version of the facts. We set forth the facts which the district court accepted. We view other facts from the record in the light most favorable to Plaintiffs unless they are inconsistent with the facts Avalon

---

[1] Middle District of Tennessee Local Rule 56.01 requires a plaintiff to submit a response to a defendant's statement of undisputed material facts either admitting or denying those facts. Where a plaintiff disputes a fact by denying it, the plaintiff must support the denial with "specific citation to the record." In this case, Plaintiffs opposed Avalon's statement of undisputed facts with general denials and without citation to the record. This falls short of the rule's mandates. In addition, Plaintiffs' response was filed twenty-days late and without leave of the court.

2

presented. *See*, *e.g.*, *Hoover v. Coca-Cola Co.*, 255 F. Supp. 2d 791, 792 n.1 (M.D. Tenn. 2003).

Avalon is a non-profit organization that provides, among other things, counseling, court advocacy, and shelter for victims or witnesses of domestic or sexual violence in Cumberland County, Tennessee, as well as surrounding counties. Avalon's main office is in Crossville, Tennessee. In addition, Avalon has an office in Dayton, Tennessee. During the time relevant to this case, Sharon Moore and Patty Boardwine were involved in a romantic relationship. Moore was Avalon's Executive Director, and as such, responsible for overseeing the day-to-day operations, programs, and fundraising of Avalon. Moore worked in the Crossville office. Patty Boardwine was Avalon's Program Director. Her responsibilities included overseeing Avalon's sexual assault program, including training of personnel and volunteers. She too worked in the Crossville office. Moore supervised Boardwine, Derrick, Young, and Baugham. Boardwine did not have supervisory authority over Plaintiffs.

Derrick worked for Avalon from approximately 1993 until her resignation on January 21, 2003. At the time of her resignation, Derrick worked as Avalon's Service Coordinator in the Crossville office. Young worked as Avalon's AIM Coordinator from 1998 until she resigned on February 9, 2003. Young worked three days a week, only one of which she spent in the Crossville office. The other two days, Young worked in the court building. At the time this appeal was taken,

3

Baugham and Lee remained employed with Avalon. Baugham works for Avalon as a Program Coordinator in the Dayton office. Lee works as a Victim Advocate in the Dayton office. Baugham is Lee's direct supervisor.

Avalon has a policy prohibiting harassment, discrimination, and retaliation. If an employee wishes to report discriminatory conduct, the employee may file a grievance. According to Avalon's policy, Avalon's Executive Director first considers and investigates the grievance. If the Executive Director cannot resolve the grievance, it is referred to the Personnel Committee of the Board of Directors. The Personnel Committee reviews the grievance and conducts an investigation. The decision of the Personnel Committee is final.

On December 9, 2002, Plaintiffs filed a grievance alleging they were subjected to Boardwine's offensive conduct and language. Despite finding Boardwine's behavior inappropriate and sexually harassing, Plaintiffs never complained to Moore prior to filing their grievance. Because Moore felt implicated, she submitted Plaintiffs' grievance to Mark White, chairman of the Personnel Committee. Mark White met with Plaintiffs, Moore, and Boardwine on December 17, 2002, to discuss Plaintiffs' grievance. Plaintiffs rejected White's proposed resolution, so the grievance was submitted to the full Personnel Committee. Avalon's Personnel Committee conducted a hearing. Plaintiffs conceded they had a full opportunity to present their evidence of harassment to the Personnel Committee. On January 14,

4

2003, the Personnel Committee issued a written determination finding Boardwine did not violate Avalon's anti-harassment policy. Nevertheless, the Personnel Committee recommended the staff participate in anti-harassment training. Since the grievance was filed, neither Baugham nor Lee, the two Plaintiffs who did not resign following the investigation, has observed Boardwine engage in any conduct they would consider inappropriate or sexually harassing. And in fact, they have had minimal contact with Boardwine since Plaintiffs filed the grievance.

Shortly after Avalon's Personnel Committee issued its decision, Derrick and Young resigned from Avalon. Derrick resigned "[d]ue to the refusal of the Personnel Committee to act to stop the continual sexual comments and innuendos and hostile work environment in the workplace[.]" Derrick, however, did not observe Boardwine engage in any conduct she considered sexually harassing after the Personnel Committee issued its decision. After the Committee issued its decision, but before her resignation, Young applied for and received the position of Executive Director at the Victim Offender Reconciliation Program Community Mediation Center. On February 9, 2003, Young submitted her letter of resignation to Moore. In her letter, Young explained the reasons for her resignation were due to "philosophical differences" and "isolation in holding abusive men accountable." Young gave thirty-days notice. However, on February 27, 2003, Young submitted a second letter of resignation effective immediately, due to her belief Moore had

5

retaliated against her by telling co-workers that Young had filed the harassment grievance because Moore had caught her in a lie.

Dissatisfied with the outcome of the Personnel Committee's investigation, Plaintiffs filed suit against Avalon, Moore, and Boardwine alleging claims for hostile work environment same-sex sexual harassment, constructive discharge, and retaliation under Title VII, 42 U.S.C. § 2000e *et seq*.; the Tennessee Human Rights Act (THRA), Tenn. Code Ann. § 4-21-101, *et seq*.; and 42 U.S.C. § 1985(3), a federal statute prohibiting conspiracies to violate civil rights. The district court dismissed for failure to state a claim Plaintiffs' § 1985(3) conspiracy claim and THRA claim, as well as Plaintiffs' Title VII claims against Defendants Moore and Boardwine.[2] See Fed. R. Civ. P. 12(b)(6). Thereafter, the district court granted summary judgment to Avalon on Plaintiffs' remaining claims for hostile work environment same-sex sexual harassment, constructive discharge, and retaliation under Title VII. The district court concluded: (1) Plaintiffs failed to present sufficient evidence to establish a prima facie claim of hostile work environment same-sex sexual harassment, (2) Derrick and Young's claim for constructive discharged failed because the work environment was not sufficiently unbearable that a reasonable person would feel compelled to resign, and (3) Baugham and Lee's retaliation claim failed because they did not suffer an adverse employment action

---

[2] Plaintiffs have not appealed the district court's dismissal of these claims.

6

after filing the grievance.  Plaintiffs filed a motion for post-judgment relief.  The district court summarily denied the motion, and Plaintiffs appealed.

## II.

Our standard of review is a familiar one.  We review the district court order granting summary judgment de novo.  *See Tysinger*, 463 F.3d at 572.  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). To overcome summary judgment, the nonmoving party "must rebut such a showing by presenting sufficient evidence on which a jury could reasonably find" in its favor.  *Clark v. United Parcel Service, Inc.*, 400 F.3d 341, 347 (6th Cir. 2005)

### A.

Plaintiffs' hostile work environment claim focuses on Boardwine's use of offensive language and offensive behavior in and outside the workplace.  The allegedly harassing behavior took place over a period of approximately three years. We set forth each Plaintiffs' allegations of sexual harassment considered by the district court in granting summary judgment.

#### 1.

Derrick makes the following allegations of sexual harassment: According to Derrick, on one occasion she was having a conversation with Moore and Boardwine when Boardwine began "caressing [Moore] and stroking her hair" and telling Moore "she was the love of her life." Derrick thought Boardwine "was just trying to show [her] that it didn't really matter what [she] thought." On another occasion, she observed Boardwine blow in Moore's ear. Derrick was "the container for a lot of complaints" about Boardwine. On one occasion, a co-worker came up to her and told her "she was going to have a nervous breakdown because she felt caught in the middle of [Moore and Boardwine's]" relationship, because according to the co-worker "[t]hey're either fighting or fucking all the time." On another occasion, another co-worker called Derrick to tell her Boardwine "had just cussed her out." When Derrick asked the co-worker what happened, "she said that [Boardwine] hadn't gotten a message that she felt like she should have gotten and so she cursed and yelled" at the co-worker.

Boardwine's behavior also made it difficult for Derrick to discipline her subordinates when they too acted unprofessionally. For example, when Derrick would talk to Eve Bowman, one of her subordinates, about her unprofessional behavior, Eve would defend her conduct by comparing herself to Boardwine. Derrick believes Boardwine's behavior created a hostile work environment. For example, Derrick remembered that on one occasion, Boardwine became visibly upset

8

and began "stomping through the office talking about what a goddam day care that she was running" because an employee called in sick. Derrick once witnessed Boardwine "rubbing" her genital area and "making comments" after Boardwine accidently spilled a drink on herself. Derrick, however, could not remember the comments.

2.

Young makes the following allegations of sexual harassment: On one occasion, Young bumped into a co-worker and Boardwine "inhaled deeply and leaned back and said something about she either wanted some pussy or had to get some pussy[.]" Once Young observed Boardwine "berating" a co-worker who was unloading a truck, and making comments about how she was "sweating like a hog or sweating like a man." On another occasion, Boardwine made a comment to Young about how a co-worker's ergonomic mouse pad had a "hard-on" and how Boardwine's pen had "ejaculated all over" her when it leaked ink. Once Moore and Boardwine had a "scream fest" which "terrified" Young. Young found offensive Boardwine's reference to a particular judge as a "limp dick." And Boardwine would use "the F word" and curse a lot as well as "storm[] around the office" which intimidated Young. On one occasion, Boardwine played a prank on a co-worker that "disturbed [Young] so bad[ly] [she] couldn't go back to the office" that afternoon.

3.

9

Baugham makes the following allegations of sexual harassment: On Baugham's 38th birthday, Moore and Boardwine came to Baugham's house for a pool party. At the time, Boardwine was not an Avalon employee. The three went skinny-dipping, and Moore and Boardwine "kept kissing and fondling each other[.]" This made Baugham uncomfortable. That same day, Moore asked Baugham what she thought about hiring Boardwine. Baugham considered Moore's question as harassing. On one occasion, Moore, Boardwine, Baugham, and Lee went to a restaurant after work to have drinks. As Baugham and Lee were leaving, Boardwine stood by a large glass window and grabbed her genitals. Baugham believes Boardwine grabbed her genitals to be "crude and vulgar" because that is "just the way [Boardwine] would act in public a lot and in private." On another occasion at the same restaurant, Boardwine "was licking everyone at the table" and then Moore "licked her back and they were licking each other."

Baugham once saw Moore and Boardwine "making out in front of the Christmas tree" at the office. Baugham said something like "Get a room, or You guys stop that[,]" because she felt "very uncomfortable[.]" But when they did not stop, she left the room. Boardwine "always made comments about her pussy" claiming it was her "cat." One time after a meeting, Boardwine "spread her legs open and drug [sic] her hands up to her [genitals] and said, I got to go home and give my pussy some medicine[.]" On a number of occasions, Moore and Boardwine

10

would tell a joke about "Sally Whiskey," a "lesbian frontier woman," and if you did not "participate" Boardwine would "get very ugly" and would "say very ugly comments to you and about you." Boardwine talked about her and Moore sharing a yeast infection and how they were passing it back and forth. Lastly, Baugham complains she was subjected to listen to Boardwine's stories about her sex life with Moore.

4.

Lee makes the following allegations of sexual harassment: Boardwine would get "really close" to Moore. Once, she observed Boardwine walk up to Moore and put her breast on Moore's head. Boardwine's conduct "shocked her" because she "didn't think that that should be going on" at work. Lee believes Boardwine's behavior was harassing. Lee reported the incident to Baugham, but does not recall if Baugham did anything about it. Once she overheard Boardwine telling a co-worker that her pen had "ejaculated all over her hand." Once Boardwine commented to her that "her favorite position was face down[.]" Once at a staff meeting, Boardwine said she was not wearing a bra and "she rubbed her hands over her breasts until her nipples got hard and she was bouncing them around and talking to them and looking at me and anybody else that would pay attention to her." Lee complained to Baugham. After a meeting Lee observed Boardwine rub her genitals and say "she had to give her pussy some medicine." Lee also observed Boardwine stand at the

11

window of the restaurant grabbing her genitals and "moving it up and down" as Lee and Baugham were leaving. Lee heard Boardwine call a particular individual on two or three occasions a "limp dick." And on one occasion she commented that "maybe . . . if she gave him a blow job he would change his mind." Lee heard other employees use profanity in the office, including Baugham.

B.

Plaintiffs argue the district court erred in finding Plaintiffs' evidence did not create a genuine issue of material fact as to their claim for hostile work environment same-sex harassment. Title VII makes it unlawful for an employer to discriminate against an employee with respect to her "compensation, terms, conditions, or privileges of employment, because of . . . sex." 42 U.S.C. § 2000e-2(a)(1). Discrimination based on sex that creates a hostile or abusive working environment violates Title VII. *See Clark*, 400 F.3d at 347; *accord Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (noting discrimination "because of ⋯ sex " includes "requiring people to work in a discriminatorily hostile or abusive environment"). To establish a prima facie claim for hostile work environment same-sex harassment, an employee must establish (1) she is a member of a protected class, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on her sex, (4) the harassment created a hostile work environment, and (5) the employer failed

12

to take reasonable steps to prevent and correct any sexually harassing behavior. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462-63 (6th Cir. 2000).

Plaintiffs must overcome a high threshold to demonstrate actionable harm, for "complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are insufficient to obtain relief under Title VII. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation omitted). As with all harassment, same-sex harassment must be "because of sex" to be actionable under Title VII. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). In other words, Plaintiffs must show that *but for their gender* they would not have been harassed. *See Williams v. General Motors Corp.*, 187 F.3d 533, 565 (6th Cir. 1999). Thus, "'[i]f the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment.'" *Dick v. Phone Directories Company, Inc.*, 397 F.3d 1256, 1263 (10th Cir. 2005) (quoting *Stahl v. Sun Microsystems, Inc.*, 19 F.3d 533, 538 (10th Cir. 1994)).

Not every sexually hostile work environment, however, is actionable under Title VII. To fall within the purview of Title VII, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive

13

working environment." *Harris*, 510 U.S. at 21 (internal quotations and citations omitted). We evaluate the severity of the harassment from the perspective of a reasonable person in the employee's shoes, considering the totality of the circumstances. *See Oncale*, 523 U.S. at 81 (citing *Harris*, 510 U.S. at 23). Appropriate factors for consideration included, "'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher*, 524 U.S. at 787-88 (quoting *Harris*, 510 U.S. at 23). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment." *Id*. at 788 (internal citation and quotations omitted). In making this determination, we must consider "the social context in which particular behavior occurs and is experienced by its target." *Oncale*, 523 U.S. at 81.

At last, even after a hostile work environment has been established, "[f]or an employer to be liable for the sexual harassment of an employee by a coworker, the harassed employee must show the employer both (1) knew or should have known of the harassment and (2) failed to take prompt and appropriate corrective action." *E.E.O.C. v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 518 (6th Cir. 2001).[3] Generally,

---

[3] In contrast, when the harassment is by a supervisor, the defendant is held strictly liable. *See Clark*, 400 F.3d at 348 (finding UPS "automatically liable for (continued...)

"a response is adequate if it is reasonably calculated to end the harassment." *Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir. 1999). Evidence a supervisor knew of the harassing conduct suffices to establish constructive notice. *See Randolph v. Ohio Dep't of Youth Serv.*, 453 F.3d 724, 735 (6th Cir. 2006) (finding summary judgment improperly granted where the plaintiff's testimony indicated supervisors were aware of the harassment but largely ignored it).

C.

After reviewing the record before us, we agree that summary judgment was proper on Plaintiffs' claim of hostile work environment same-sex harassment. Notwithstanding Plaintiffs' argument to the contrary, they presented no evidence from which a jury could reasonably find in their favor. Boardwine's behavior was undoubtedly vulgar and wholly inappropriate for the workplace. But Plaintiffs presented no evidence that Plaintiffs' sex motivated Boardwine's behavior. *See Oncale*, 523 U.S. at 80-81 (discussing three evidentiary routes under which a plaintiff in a same-sex harassment suit may prove an inference of discrimination because of sex). In the context of same-sex harassment, an employee may prove discrimination based on sex when, for example, evidence shows a woman harassed

---

[3](...continued)
the alleged hostile work environment created by Brock because he was the manager of the entire Claims Department where both Clark and Knoop worked, and therefore had supervisory authority over them"). Here, however, Plaintiffs acknowledged Moore did not engage in any behavior they considered harassing.

15

other women "in such sex-specific and derogatory terms . . . as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace." *Id*. at 80. Most of Plaintiffs' allegations of harassment, however, are devoid of sex-specific or derogatory terms and have absolutely nothing to do with the fact that Plaintiffs are females. Plaintiffs argue Boardwine's behavior shows "anti-female animus" because Plaintiffs were "subjected to gender specific epitaph and comments or conduct applicable to the female genitalia[.]" Harassment does not arise, however, simply because "the words used [or the gestures used] have sexual content or connotations." *Id*. And in fact, Derrick, Young, and Lee admitted Boardwine did not direct any sexual comments or innuendos toward them. Baugham presented no evidence to the contrary. Plaintiffs' conclusory allegations and unsupported speculations that Boardwine harbored hostility toward females is insufficient to overcome summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Motivation aside, no reasonable jury could conclude the working environment was sufficiently severe or pervasive to sustain Plaintiffs' claim. Most, if not all, of Plaintiffs' allegations consist of *one time occurrences that took place over a period of three years*. Even considering them in the totality, we can hardly say the environment was permeated with discriminatory intimidation, ridicule, and insult. *Harris*, 510 U.S. at 21. Boardwine's conduct was certainly vulgar, but Title VII

16

does not attempt "to purge the workplace of vulgarity." *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995). And Plaintiffs presented no evidence the working environment was "so objectively offensive as to alter the 'conditions'" of their employment. *Oncale*, 532 U.S. at 81. Baugham and Lee worked in an office located in a different city and only saw Boardwine during staff meetings. Lee saw Boardwine four times a month. While Young and Boardwine worked in the same office, Young only saw Boardwine once a week. Moreover, both Baugham and Derrick admitted engaging in similar conduct. Derrick admitted using profanity, discussing her intimate relationships with men, and telling lewd and suggestive jokes. Baugham admitted to discussing her personal and intimate sex life with her co-workers, including Boardwine. And Lee heard co-workers, including Baugham, use profanities at work.

Lastly, Plaintiffs cannot prove Avalon's liability. While Moore might have been aware of some of Boardwine's behavior, not until Plaintiffs filed their formal grievance did Moore learn Plaintiffs considered Boardwine's behavior harassing. And after Plaintiffs filed the grievance, Avalon took prompt and appropriate remedial action to rectify the situation. *Harbert-Yeargin*, 266 F.3d at 518. Plaintiffs own evidence supports a conclusion that after they filed the grievance they did not observe Boardwine engage in any harassing behavior. Therefore, the district court

17

did not err in granting summary judgment to Avalon on Plaintiffs' hostile work environment same-sex harassment claim.

III.

Derrick and Young also argue the district court erred in concluding as a matter of law that Avalon did not constructively discharge them. We disagree. Harassment that creates a hostile working environment may in some circumstances constructively discharge an employee. To prevail on a claim for constructive discharge, *in addition* to showing the harassing behavior was sufficiently severe to alter the terms and conditions of employment, the employee must show "working conditions [became] so intolerable that a reasonable person would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 146-47 (2004).

In addition to the fact Derrick and Young have not shown the working environment at Avalon was sufficiently severe to alter the terms and conditions of their employment, neither Young nor Derrick has proven they felt compelled to resign. Derrick resigned on January 21, 2003, effective immediately, while Young resigned on February 9, 2003, effectively thirty-days later. Both resignations came after the Personnel Committee reached its decision and well after all harassing behavior had stopped. Therefore, the working environment at the time of their resignation was not so intolerable so as to lead a reasonable person to resign from her employment. Moreover, neither Derrick nor Young resigned as a result of an

18

intolerable environment. Derrick resigned because she was unsatisfied with Avalon's decision and Young resigned citing philosophical differences.[4] Therefore, the district court did not err in awarding Avalon summary judgment on Plaintiffs' constructive discharge claim.

IV.

Lastly, Baugham and Lee argue the district court erred in concluding Avalon did not retaliate against them for filing their grievance. They cite to numerous acts Avalon took against them in retaliation for filing the grievance. In granting Avalon's motion for summary judgment on their Title VII retaliation claim, the district court found Baugham and Lee's allegations did not rise to the level of adverse employment action. While this appeal was pending, however, the Supreme Court decided *Burlington N. & Santa Fe Ry. Co. v. White*, 548 __ U.S. __, 126 S. Ct. 2405 (2006), changing the legal standard to be applied to claims of retaliation brought under Title

---

[4] Young also argues she was constructively discharged when she made her resignation effective immediately after learning Moore had allegedly retaliated against her by telling some employees Young had filed the grievance because Moore caught her in a lie. Young's argument is unpersuasive for two reasons. First, Young had already resigned from her employment. Second, Avalon can defend against such claim because Young did not complain to Moore's supervisors about Moore's purported conduct so as to give Avalon an opportunity to remedy the situation. *See Suders*, 542 U.S. at 133-34 ("An employer may defend against a [constructive discharge] claim by showing both (1) that it had installed a readily accessible and effective policy for reporting and resolving complaints of sexual harassment, and (2) that the plaintiff unreasonably failed to avail herself of that employer-provided preventive or remedial apparatus.").

VII. We express no opinion as to how this issue should be resolved. We think it proper to allow the district court to first address this issue in light of *Burlington*. Accordingly, we remand to the district court Baugham and Lee's Title VII retaliation claim.[5]

## V.

For the foregoing reasons, we affirm the district court's order granting summary judgment in Avalon's favor as to Plaintiffs' claims for a sexual hostile work environment and constructive discharge under Title VII. We remand Plaintiffs' claim for retaliation under Title VII with instructions that the district court reconsider its decision in light of *Burlington N. & Santa Fe v. White*.

---

[5] Following the district court's grant of summary judgment in Avalon's favor, Plaintiffs filed a post-judgment motion seeking to amend the court's conclusion, amend or alter the court's judgment, or obtain relief from judgment under Rule 52(b), Rule 59(e), and Rule 60(b) of the Federal Rules of Civil Procedure respectively. Plaintiffs argued the district court erred by failing to consider certain evidentiary documents filed in support of their motion in opposition to summary judgment. In granting summary judgment, the district court noted "Plaintiffs' supporting papers in opposition . . . consist[] of unsworn and unsigned responses to interrogatories and unauthenticated documents . . . [that] do not comply with Rule 56(e)." Plaintiffs appeal the court's determination arguing in conclusory fashion the court committed error. We disagree. After reviewing the record, we conclude the district court properly disregarded Plaintiffs' responses to Avalon's interrogatories and responses to Avalon's request for production as the documents Plaintiffs submitted in support of their opposition motion were neither signed nor authenticated and, therefore, are inadmissible evidence for purposes of summary judgment. *See* Fed. R. Civ. P. 56(e).

AFFIRMED IN PART, VACATED IN PART, AND REMANDED IN PART FOR FURTHER CONSIDERATION CONSISTENT WITH THIS OPINION.